Alan FLEMING, Appellant,

v.

**MERCANTILE BANK & TRUST COMPANY, Respondent.**

No. WD 42596.

Missouri Court of Appeals, Western District.

Oct. 23, 1990.

---

Alan J. Fleming, pro se.

Matthew R. Davis, Kansas City, for respondent.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

KENNEDY, Presiding Judge.

After our case of *Fleming v. Mercantile Bank & Trust Co.*, 766 S.W.2d 666 (Mo. App.1989) [*Fleming I*], plaintiff therein, Alan J. Fleming, filed another lawsuit against Mercantile Bank based upon the incidents described in the opinion in the above case. The reader may refer to the earlier case for a detailed statement of the facts, but in summary they were as follows: The Bank refused payment, because of insufficiency of funds, of a check of Blumer and Nally Media Partnership, of which plaintiff Fleming was a member. Plaintiff, according to evidence in the earlier trial, became irate and abusive toward employees of the Bank, charging the Bank with a mistake in failing to credit certain funds deposited therein by the partnership. As it turned out, the partnership had mistakenly deposited the funds in another bank rather than in the Mercantile Bank account, leaving the Mercantile Bank account short of funds to pay the check on which it had refused payment.

Rebecca Elliott, an employee of the Bank who had particular responsibility for the partnership account, called Thane Blumer, one of the partners in the Blumer and Nally Media Partnership, suggesting that some other person than plaintiff Fleming be designated to deal with the Bank with reference to the account, or, in the alternative, that the account be moved to a different bank.

Following Ms. Elliott's call to partner Blumer, the Blumer and Nally Media Partnership was dissolved, to plaintiff Fleming's alleged damage and loss. Fleming filed suit against the Bank for tortious interference with a business relationship, to wit, his partnership affiliation. In *Fleming I*, it was held that plaintiff failed to make a submissible case and judgment went for defendant.

The differences between the decided case and the second case (*Fleming II*) are these: The second case includes Ms. Elliott as a defendant, although it alleges that her culpable acts were done in her capacity as an agent and employee of the Bank. Whereas the first case sought damages on the theory of tortious interference with Fleming's business relationship with the Blumer and Nally Media Partnership, the second case seeks damages, in one of two counts of his petition, for what is termed Ms. Elliott's negligence in dealing with the controversy which arose over the nonpayment of the partnership check. The second

count of the petition in the second case alleges that the Bank and Ms. Elliott breached their contractual duties to plaintiff Fleming in refusing payment of the check.

In the case now before us on appeal, the second case, the trial court dismissed the petition, for the recited reason that "[p]laintiff's Petition is barred under the doctrines of res judicata, collateral estoppel and the splitting of causes of action."

■ For the following reasons, we hold that *Fleming II* is barred by the doctrine of res judicata and the trial court properly granted the Bank's motion to dismiss the action.

First invoked around the time of the Norman Conquest, the concept of res judicata has been a staple of the law for hundreds of years. *See* A. Vestal, *Res Judicata/Preclusion* at V–29 (1969).

> It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief.

*Jackson v. Hartford Accident & Indem. Co.,* 484 S.W.2d 315, 321 (Mo.1972). "[T]he whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim ... and, *a*

*fortiori,* he cannot divide the grounds of recovery." *United States v. California & Oregon Land Co.,* 192 U.S. 355, 358, 24 S.Ct. 266, 267, 48 L.Ed. 476 (1904). Res judicata applies "not only to points and issues upon which the court was actually required by the parties to form an opinion and pronounce judgment, but to every point which properly belongs to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Autenrieth v. Bartley,* 238 Mo.App. 55, 176 S.W.2d 546, 549 (1943).

The concept of res judicata is comprised of two related doctrines, claim preclusion, known as res judicata, and issue preclusion, known as collateral estoppel.

> The doctrine, in more recent times, however, has been more finely defined, and authorities have recognized two distinctions within the doctrine of res judicata. The first of these distinctions is the traditional res judicata which prohibits the same parties from relitigating the same issue of action. The second distinction is what might be called issue preclusion, more commonly referred to as collateral estoppel, and precludes the same parties from relitigating issues previously adjudicated.

*Peoples–Home Life Ins. Co. v. Haake,* 604 S.W.2d 1, 7 (Mo.App.1980). As the Supreme Court stated in reference to the sister doctrines of res judicata and collateral estoppel in *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), "[a]pplication of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions."

Res judicata serves important functions in the law. The Supreme Court has listed the purposes of res judicata as follows: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries .from the expense and vexation attending multiple lawsuits, conserves judi-

cial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153–54, 99 S.Ct. at 973–74.

Courts of this State have applied a four-part test to determine whether res judicata is to be given effect in a particular case. Commonly known as "the four identities," the court in *Norval v. Whitesell*, 605 S.W.2d 789, 790 (Mo. banc 1980), listed them as follows:

> [I]n order to have estoppel by a former judgment (res adjudicata), there must be: (1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made.

*See also Barkley v. Carter County State Bank*, 791 S.W.2d 906, 910 (Mo.App.1990); *Ingels v. Citizens State Bank*, 632 S.W.2d 9, 11 (Mo.App.1982); *Haake*, 604 S.W.2d at 7; *Prentzler v. Schneider*, 411 S.W.2d 135, 138 (Mo. banc 1966); *Rossi v. Davis*, 345 Mo. 362, 133 S.W.2d 363, 373 (1939).

Fleming argues that the cause of action in *Fleming I* is "wholly separate and distinct" from the cause of action in *Fleming II*. This argument implicates elements (1) and (2). Also, the addition of Rebecca Elliott as a party defendant to *Fleming II* necessitates a discussion of elements (3) and (4).

Was the cause of action asserted in *Fleming II* the same as the cause of action asserted in *Fleming I*? The claim asserted by the petition in *Fleming II* arises out of the same matrix of facts as the claim asserted in *Fleming I*. In each case, the immediate, or the ultimate, cause of Fleming's alleged loss and damage was the dissolution of the partnership.

"Separate legal theories are not to be considered as separate claims, even if 'the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'" *Siesta Manor, Inc. v. Community Federal*, 716 S.W.2d 835, 839 (Mo.App.1986) (quoting *Restatement (Second) of Judgments* § 24 comment c (1982)). In *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10 (1948), the Missouri Supreme Court stated:

> The tests for determining whether a cause of action is single and cannot be split, have been said to be: (1) whether separate actions brought thereon arise out of the same "act, contract or transaction"; (2) or, whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. Our decisions have pretty generally employed the first of these tests, and use one or more of the words "act"; "contract" or "transaction." And our Civil Code, itself, now and in the past, has used the word "transaction" as stating the basis of a cause of action, or claim, or counterclaim.

The court then defined "transaction" as including "the aggregate of all the circumstances which constitute the foundation for a claim, counterclaim, etc." *Id.*

> Having been defeated on the merits in one action, a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim when the new premise or ground is related to the same transaction or series of transactions, and accordingly the second action should be held barred.

*Restatement (Second) of Judgments* § 25 comment d (1982).

■ In light of the foregoing principles, we hold that elements (1) and (2) are satisfied in this case.[1] The identity of the thing sued for and the identity of the cause of action are the same in *Fleming I* and

---

1. *See* the recent decision of *Barkley v. Carter County State Bank*, 791 S.W.2d 906, 910 n. 4 (Mo.App.1990), for a discussion of elements (1) and (2).

*Fleming II.* The claim asserted in *Fleming II* arises out of the same transaction as the claim asserted in *Fleming I.* Both cases were brought in response to the Bank's actions which allegedly caused the dissolution of the partnership. A claimant may not, as plaintiff Fleming has done here, merely recast the facts to focus upon some different aspect of the transaction than the first and thereby escape the bar of res judicata. It does not save Fleming's petition in *Fleming II* that it may have alleged additional facts (such as Ms. Elliott's allegedly negligent acts) which would have required additional evidence to that required to prove the claim in the first petition. Any such claim must have been included in the first petition with any other claim arising out of the described transaction. If it is not included, it is lost. A defendant may not be required to come into court time and again to defend its position in what is essentially the same controversy presented by the plaintiff from a different angle.

Element (3)—identity of the persons and parties to the action—at first blush appears more problematic. Although Fleming was plaintiff and the Bank was defendant in both cases, Ms. Elliott was added as a party defendant in *Fleming II.* The issue has been resolved as follows:

> [W]here suit is brought against an employer for the alleged wrong of an employee, it is held that a judgment on the merits for the employer bars an action against the employee, at least where it is conceded in the first action that the employee was acting within the scope of his employment.

46 Am.Jur.2d *Judgments* § 571 (1969). Missouri cases are in accord. In *Berwald v. Ratliff,* 782 S.W.2d 709, 711 (Mo.App. 1989), the court stated:

> [W]here a judgment is in favor of the principal, the judgment is res judicata in an action against the agent, a derivative responsibility being present; . . . Similarly, where suit is brought against an employer for the alleged wrong of an em-

ployee, it is held that a judgment on the merits for the employer bars an action against the employee, at least where it is conceded in the first action that the employee was acting within the scope of his employment.

"[O]ne who has had his day in court may not reopen the identical issues by merely adding new parties who are unnecessary to the determination of those issues." *Reis v. La Presto,* 324 S.W.2d 648, 653 (Mo.1959).

It has never been alleged that Ms. Elliott was not acting within the scope of her employment. In fact, in his petition filed in *Fleming II,* Fleming acknowledges that "Rebecca Elliott was an officer of the Mercantile Bank & Trust Corporation a Missouri Corporation [sic] and was acting within the course and scope of her agency at all times and in all regards to all acts complained of in this petition." Accordingly, element (3) is present.

Element (4)—identity of the quality of the person for or against whom the claim is made—is also satisfied in this case. "The phrase 'quality of the person' apparently refers to the status in which he sues or is sued." *Lewis v. Barnes Hospital,* 685 S.W.2d 591, 594 n. 1 (Mo.App.1985). The quality of the Bank, that is, the status in which it was sued, is the same in both actions. Element (4) has nothing to do with Rebecca Elliott, since she was not a party to the first action.

The four identities for res judicata are present. Fleming has had his day in court and is precluded by the doctrine of res judicata from taking a second bite at the apple. The trial court ruled correctly in dismissing the petition, both as against the Bank and Rebecca Elliott.

The judgment is affirmed.

All concur.