Dennis H. SELF, Plaintiff–
Respondent/Cross–
Appellant,

v.

LENERTZ TERMINAL, INC.,
Defendant–Appellant/Cross–
Respondent,

and

Dr. Paul Spence, Cross–Respondent.

Nos. 62066, 62112.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 27, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 25, 1993.

Application to Transfer Denied
June 29, 1993.

Buerkle, Beeson & Lugwig, Michael L. Jackson, Jackson, for Lenertz.

Talbert & Mallon, P.C., Lance R. Mallon, Alton, IL, for Self.

Limbaugh, Russell, Payne & Howard, Nancy Lee Brown, Cape Girardeau, for Spence.

KAROHL, Chief Judge.

Dennis Self, a former employee of Lenertz Terminal, Inc., filed a petition against Lenertz alleging a discriminatory discharge prohibited by the provisions of § 287.780 RSMo 1986. Self also named Daryl McRaven, his shop foreman, and Dr. Paul A. Spence as defendants charging them on the same theory. The court dismissed the claim against McRaven for failure to state a cause of action. It granted summary judgment for defendant Dr. Spence. After a jury trial, the court entered judgment for plaintiff against Lenertz for actual and punitive damages. Lenertz appeals, Self cross-appeals contesting the summary judgment in favor of defendant Dr. Spence. He argues that the converse instruction submitted by Lenertz was erroneous and should not be used in the event a new trial is ordered.

Section 287.780 RSMo 1986 creates a statutory cause of action for an employee against an *employer* if "employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter." The dismissal of defendant McRaven has not been appealed. Dr. Spence was not an employer or agent of plaintiff's employer. By its terms, § 287.780 does not provide a cause of action for discriminatory discharge against Dr. Spence. The summary judgment in favor of Dr. Spence is affirmed.

Employee, Self, began working for employer, Lenertz, in December, 1988 as an at will employee. Originally he was hired to wash and clean trucks. Subsequently, he performed minor maintenance and repair work. On April 26, 1989, he sustained two injuries while at work. He injured his shoulder and back lifting a heavy trash can and sustained injuries when he fell out of a truck while washing it. On that day, he was taken to Dr. Paul Spence. He also saw Dr. Spence on May 1, May 8 and May 15, 1989. On May 15, Dr. Spence released Self to return to work with the qualifica-

tion that he may need help lifting heavy objects.

The testimony regarding when Self returned to work is conflicting. However, Self claims he was still in great pain when he reported either May 15 or 16. Lenertz claims Self was offered light duty work which he refused. Self complained of the treatment given by Dr. Spence and requested he be sent to a specialist. Mr. Beard, the shop manager, informed Self he could go to a specialist of his choice but Lenertz would pay only if additional treatments were necessary.

McRaven, the shop foreman, wrote Self a letter on May 16 stating a physician had released him to return to work and he was expected to begin working May 22. If Self failed to report, a voluntary resignation would be accepted. Lenertz allowed Self to stay home until May 22.

Self was able to work only two hours on May 22 before he informed McRaven that he was in too much pain to continue. McRaven met with Beard. Thereafter, McRaven fired Self. According to Beard, Self admitted he could no longer perform his assigned duties and refused to perform lighter duties. Beard and McRaven relied on Dr. Spence's opinion Self was able to work. Self claimed he had not seen a specialist because he could not afford one.

In late July, 1989, based on the advice of his attorney, Self sought additional medical care. He went to Dr. Gordon Eller. Dr. Eller determined Self suffered from a herniated disk which was surgically treated by Dr. Sampson on December 7, 1989. The doctor did not conclude the condition was caused by the April events. Self then filed this action for damages due to wrongful discharge.

■ In it's first point on appeal, Lenertz alleges instruction error. Instruction No. 5, the verdict director, was presented to the jury in the following format:

Your verdict must be for the plaintiff if you believe:

First, the plaintiff, while employed by the defendant, exercised certain of his rights under the Workers' Compensation Law by requesting from the employer medical treatment as may have been reasonably required after the injury or disability to cure and relieve from the effects of the injury, and

Second, as a direct and exclusive result of plaintiff exercising said right under Workers' Compensation Law, defendant discharged plaintiff, and

Third, as a direct result of such discharge, plaintiff sustained damage.

Lenertz's allegations of error with respect to No. 5 include (1) Self was allowed to argue and the jury to conclude that plaintiff had a right at the time of discharge to continued employment until provided with medical treatment as was necessary to cure and relieve from the effects of Self's injuries; (2) allowing the jury to improperly conclude that Self could not be discharged for non-performance during the healing period; and (3) allowing the jury to conclude Lenertz had an obligation to choose the treating physician and employee had the right to insist that Lenertz make that choice.

■ There is no MAI verdict director for wrongful discharge cases. Rule 70.02(e) controls. While basing the instruction on the statutory elements of the claim is necessary, the instruction must specifically state what right under workers' compensation law is being violated. *See Henderson v. St. Louis Housing Authority*, 605 S.W.2d 800 (Mo.App.1979). In this case, Instruction No. 5 failed to state a right created by the workers' compensation law.

The relevant part of the instruction is *"requesting* from the employer medical treatment ..."* (Our emphasis). In order to qualify as a proper instruction, it must correspond with the rights established in § 287.140. That section states: "... the employee shall receive and the employer shall provide such medical ... as may reasonably be required after the injury...." The statute talks of "receiving" and "providing" but not merely "requesting." These differences are especially important given the facts of this case. The instruction in a case where medical care was pro-

vided and terminated with a medical opinion employee was healed permit recovery for denial of a request for further medical care, but not the denial of care. Moreover, plaintiff tried the case on the theory Self was fired because he filed a workers' compensation claim, not because Lenertz objected to Self's request for medical treatment.

Lenertz provided medical treatment immediately after the injuries. After three examinations and an attempt at physical therapy, the doctor released Self to work. Lenertz, relying on this information, terminated Self because he was unwilling to work. The discharge was for refusing to work, not for the purpose of denying Self medical care.

■ The statute allows an injured employee to obtain additional medical care at his own expense, § 287.140(1) RSMo 1986, subject to proof an employer-insurer may be liable to reimburse or pay expenses incurred. In this case, Self knew he could choose further medical treatment, but chose not to seek additional help. The statute does not define any duty for an employer to act upon a request for medical treatment after providing medical care which the doctor terminates with an opinion of "cured." Therefore, Lenertz did not breach its statutory duty by not acceding to a request.

Lenertz has not requested a reversal because Instruction No. 5 was not supported. The only relief requested is a remand. The claim of instructional error is sustained and the cause is remanded for further proceedings regarding actual damages.

■ Next, Lenertz raises two claims of error with respect to Instruction No. 8. The punitive damage instruction was submitted to the jury in the following format:

> If you find the issues in favor of plaintiff, and if you believe the conduct of defendant as submitted in Instruction No. 5, was outrageous because of defendant's evil motive or reckless indifference to the rights of others, then in addition to any damages which you find plaintiff entitled under Instruction No. 7,

you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct.

■ First, Lenertz contends there was no substantial evidence that appellant acted outrageously, with "evil motive or reckless disregard" of the rights of plaintiff. In determining the issue of submissibility, the evidence must be considered in the light most favorable to plaintiff. *Henderson*, 605 S.W.2d 800 (Mo.App.1979). Plaintiff must be given the benefit of all inferences reasonably drawn from the evidence. *Id.*

■ The claim for wrongful discharge under § 287.780 RSMo 1986 is a judicially cognizable independent tort which may warrant punitive damages. *Weidower v. ACF Industries, Inc.*, 715 S.W.2d 303, 308 (Mo.App.1986). The elements of this tort include intent and knowledge, evidence of which are necessary to support the legal malice required for punitive damages. *Id.* Legal malice is defined as an inference of malice which can be reasonably drawn from wrongful acts. Blacks' Law Dictionary, 806 (5th ed. 1979).

Second, Lenertz claims Instruction No. 8 is defective due to its dependence on Instruction 5. As previously decided, No. 5 incorrectly states the law. For that reason it was error to submit the instruction. Lenertz has asked for a reversal on this issue, not merely a remand. Because we find the verdict directing instruction depended on a statutory duty not contained in the statute, the request for reversal on this issue is sustained. The punitive damage issue was tried and not proven.

■ In point four, Lenertz alleges the trial court erred in allowing testimony of a representative of defendant's workers' compensation carrier and of Daryl McRaven. Both testified about the rights and obligations of Lenertz and the insurance company with respect to payment for and choice of medical care. Essentially, they testified to the procedures of their respective employers regarding treatment of claims. Specifically, they discussed how a

physician was chosen and who pays the claim. Neither testified about their interpretation of the statute involved or their opinion on a pure question of law. Instead, the testimony was descriptive and procedural in nature.

The testimony of both witnesses was relevant to show intent of defendant. There were questions of fact regarding Self's medical treatment and how such treatment related to his discharge. Therefore, no error occurred in admitting this evidence.

Lenertz next complains that plaintiff's testimony regarding statements of Diana Mehan, an employee of Lenertz, to Self regarding his claim was inadmissible hearsay. The statement in question was a part of a conversation between Self and Mehan on the morning before he was fired. The evidence was that Mehan, speaking to Self said "she asked me what I—why I had hired lawyers, and then she mentioned—what the hell do I expect to get out of the workman's [sic] compensation claim and who in the hell is Talbert and Mallon law Firm?"

Lenertz asserts admission was improper because Mehan was not acting with authority of the company and the statement should not be used against defendant. The statement was not offered to prove the truth of the matter asserted. It was offered to show the intent of employer. Intent is an element of wrongful discharge. The statement does not fall within the definition of hearsay.

In his sixth point, Lenertz claims error in allowing testimony regarding the payment of medical care. The witness was a representative of Lenertz's workers' compensation insurance carrier. The testimony established that it was the insurance company, not Lenertz, who would be responsible for payment of any additional medical treatment received by Self. Lenertz argues evidence of the existence or non-existence of liability insurance coverage, when offered to prove wrongful conduct of a party, must be excluded. *See Stanford v. Morgan*, 588 S.W.2d 89, 91 (Mo.App.1979).

While Lenertz is correct in his statement of the general rule, it is inapplicable in this case. Self's theory was that he was terminated for exercising his rights under workers' compensation law. In such cases it would appear obvious to the jury that the employer carried insurance. There was evidence of the participation of an insurer. Therefore, testimony regarding the employer's workers' compensation insurance does not fall within the general rule.

Additionally, not every reference to insurance constitutes reversible error. *Hulsey v. Schulze*, 713 S.W.2d 873, 875 (Mo.App.1986). The testimony referred to by Lenertz was essentially procedural information discussed above. There was discussion regarding who paid for Self's surgery and related doctor bills. We find no prejudice resulted in the admission.

In point seven, Lenertz alleges the court erred in allowing Self to argue damages for lost wages for the period from May 15 through July 19, 1989. This was the period between termination and the start of benefits due to the second opinion diagnosis. Self claims it is clear this period was not included in a lump sum benefit received by Self. We are unable to discern from the record exactly what was included in the settlement. On remand, the parties can more fully examine this issue.

Self claims error in submitting the converse verdict director to the jury in that it represents a misstatement of workers' compensation law. Because of the remand on the issue of actual damages we have considered and reject this argument.

The instruction was as follows:

Your verdict must be for defendant if you believe defendant discharged plaintiff because plaintiff was unable or unwilling to perform the ordinary duties and responsibilities of plaintiff's employment.

"Worker's Compensation laws are intended to compensate employees for job related injuries and are not intended to insure job security." *David v. Richmond Special Road Dist.*, 649 S.W.2d 252, 255 (Mo.App.1983). As the *David* case ex-

plains, an employer cannot be expected to keep a job open indefinitely. The instruction was proper because it represents a valid defense to plaintiff's claim of wrongful discharge.

We affirm summary judgment in favor of defendant Dr. Paul Spence. The judgment for punitive damages is reversed. The judgment for actual damages is reversed and remanded because the verdict directing instruction submitted only breach of a duty not imposed by § 287.780 RSMo 1986. It was therefore, erroneous as a matter of law. Accordingly, we affirm in part, reverse in part and reverse and remand in part.

SMITH and CRANE, JJ., concur.