Dennis R. WOLFE, Appellant,

v.

CENTRAL MINE EQUIPMENT
COMPANY, Respondent.

No. 65084.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 17, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 22, 1995.

Application to Transfer Denied
April 25, 1995.

William Kaseberg, Edwardsville, IL, for appellant.

J. Patrick Chassaing, Clayton, for respondent.

WHITE, Judge.

In this jury-tried § 287.780 RSMo 1986 retaliatory discharge case, plaintiff Dennis Wolfe appeals a judgment against him. On appeal, plaintiff contends the trial court erred in: (1) denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial; (2) "allowing improper evidence and argument of the questionable merits of Wolfe's injuries and workers' compensation claims, while keeping from the jury the contradictory *res judicata* findings of the Division of Workers' Compensa-

tion"; and (3) submitting defendant's converse instruction to the jury. We affirm.

Plaintiff was employed as a rig worker by defendant Central Mine Equipment Company. On February 21, 1984, plaintiff sustained a work-related injury to his back. Plaintiff received medical treatment and was given a release to return to work without limitation. However, plaintiff continued to complain of pain and scheduled an appointment on his own with Dr. Heidke, a chiropractor. Dr. Heidke recommended plaintiff not work until his back was given a complete examination. Plaintiff informed defendant of Dr. Heidke's opinion. Defendant then sent plaintiff to a medical clinic and ultimately plaintiff was referred to Dr. Marchowski, an orthopedic surgeon.

Plaintiff was off work and receiving workers' compensation benefits for much of the period from February 24, 1984 to October 18, 1984. Several times during this period, plaintiff was medically authorized to resume work. He worked seven days in March, one day in April, and five days in May. Each time he attempted to work he complained his back pain was "intolerable" and was taken off work duty. Ultimately, plaintiff was scheduled for surgery. In his statement of facts, plaintiff stated he was unable to have the surgery because defendant did not have his check for temporary total disability benefits ready and he was concerned his family would be without income during his hospitalization. However, during cross-examination, plaintiff admitted he did not have the surgery because Dr. Marchowski became angry with him and refused to perform the surgery.[1]

Plaintiff was given a full medical release and returned to work on Friday, October 19, 1984. However, on the same day, plaintiff reinjured his back while attempting to dislodge an oxygen tank. Plaintiff did not report the injury and continued to work the rest of the day. On Monday, plaintiff told Glennon Mueller, defendant's plant manager, he could not "do the job" because he was in pain. The parties dispute whether plaintiff informed Mueller of the October 19, 1984 injury on Monday. Mueller told plaintiff to return to Dr. Machek, the doctor who had given plaintiff the full medical release, and ascertain whether he would change plaintiff's work release status. Mueller also advised plaintiff, if the doctor did not change his determination, plaintiff would have to return to work or be fired. Plaintiff saw Dr. Machek later the same afternoon, but the doctor refused to change his determination. The next morning, plaintiff informed Mueller of the doctor's decision and refused to return to work until he was examined by a physician of his own choosing. Mueller immediately terminated plaintiff's employment. Plaintiff requested a service letter pursuant to § 290.140 RSMo 1986. In the letter, Mueller stated the reason for plaintiff's termination was plaintiff's failure to do available work despite having a medical release for full duty.

Following his discharge, plaintiff filed for workers' compensation benefits for the two work-related injuries. On October 17, 1990, an Administrative Law Judge (ALJ) found plaintiff was temporarily and totally disabled as a result of the February 21, 1984 accident and injury. The ALJ further found plaintiff's subsequent injury of October 19, 1984 aggravated his original injury but caused no additional permanent disability.

On April 20, 1990, plaintiff filed this cause of action against defendant for retaliatory discharge, § 287.780 RSMo 1986. The jury returned a unanimous verdict in favor of defendant. Plaintiff's motion for judgment n.o.v. or, in the alternative, a new trial was denied. This appeal followed.

In point one, plaintiff argues the trial court erred in denying his motion for judgment n.o.v. or a new trial because the record overwhelmingly established defendant discriminated against plaintiff and terminated his employment solely as a result of a dispute over plaintiff's "temporary total disability status." We disagree.

Granting judgment n.o.v. is an extreme measure which should only be done when all of the evidence and reasonable inferences to be drawn therefrom are so strongly against the opponent of the moving party's case there is no room for reasonable

---

1. Plaintiff failed to include this admission in his statement of facts, contrary to Rule 84.04(c).

minds to differ. *Commerce Bank of Lebanon v. Berry*, 692 S.W.2d 830, 831 (Mo.App. E.D.1985). In reviewing the denial of a judgment n.o.v. motion, we view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences. *Southwestern Bell Yellow Pages, Inc. v. Robbins*, 865 S.W.2d 361, 365 (Mo.App. E.D.1993).

To prevail in an action for retaliatory discharge under § 287.780, a plaintiff must prove four elements: (1) plaintiff's status as an employee of defendant before injury; (2) plaintiff's exercise of a right granted by the Workers' Compensation Law, Chapter 287 RSMo 1986; (3) employer's discharge of or discrimination against plaintiff; and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions. *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273, 275 (Mo. banc 1984). Causality does not exist if the basis for discharge is valid and nonpretextual. *Id.*

In the case at hand, Mueller testified at length regarding his reasons for terminating plaintiff's employment. Mueller testified he terminated plaintiff because he "refused to do the work available, he wouldn't or he could not do it." Mueller also denied firing or taking any other action against plaintiff to harm or harass plaintiff for exercising his workers' compensation rights. Credibility of witnesses is for the jury to determine. *Poluski v. Richardson Transportation*, 877 S.W.2d 709, 714 (Mo. App.E.D.1994). From this testimony the jury could have inferred there was no causal relationship between plaintiff's exercise of a right granted to him under the Workers' Compensation Law and Mueller's action in terminating plaintiff's employment. Nothing in the Workers' Compensation Law requires an employer to retain an injured employee when he has recovered from his injuries and is declared able to return to work but cannot or will not perform the duties required by his job. *Arie v. Intertherm, Inc.*, 648 S.W.2d 142, 150 (Mo.App.E.D.1983). Accordingly, the trial court's denial of plaintiff's motion for judgment n.o.v. or a new trial was proper. Point denied.

In his second point, plaintiff essentially argues the trial court made two errors. First, plaintiff contends the trial court erred in allowing improper evidence and argument of the questionable merits of plaintiff's injuries. Second, plaintiff argues the trial court erred in withdrawing from the jury the findings of the ALJ.

Defendant elicited testimony from Mueller, plaintiff's supervisor, and a co-worker who served as an assistant shop steward regarding when plaintiff reported the October 19, 1984 injury. Each testified plaintiff did not report the injury prior to his termination. Mueller testified he was not notified of plaintiff's October 19, 1984 injury until November 16, 1984, almost a month after plaintiff's termination when plaintiff first filed a workers' compensation claim for the injury. Defendant also admitted into evidence plaintiff's workers' compensation claim for his first injury of February 21, 1984. It was filed on October 24, 1984 and made no mention of the October 19, 1984 injury. This testimony and evidence was contradicted by plaintiff who testified he told Mueller and his supervisor of his October 19, 1984 injury on October 22, 1984, the day before he was terminated. Mueller also testified he received information from plaintiff's treating physicians immediately after plaintiff's initial injury of February 21, 1984 which indicated plaintiff's back problems were related to causes other than a work-related accident. Based on this information, Mueller testified he initially doubted plaintiff's injury was work-related and, as a result, told plaintiff he should be examined by his own doctor for any problems unrelated to work. Additionally, during closing argument, defense counsel suggested plaintiff had not, in fact, suffered a subsequent injury on October 19, 1984. Plaintiff argues this testimony and argument was barred by the *res judicata* findings of the ALJ which held plaintiff suffered from work-related injuries on February 21 and October 19, 1984.

*Res judicata* is comprised of two separate and distinct doctrines: claim preclusion, known as res judicata and issue preclusion, known as collateral estoppel. *Fleming v. Mercantile Bank & Trust Co.*, 796 S.W.2d 931, 933 (Mo.App.W.D.1990). Claim preclu-

sion bars the relitigation of the same claim. *Id.* Issue preclusion, in contrast, precludes a party from relitigating factual or legal issues which were decided and necessary to a prior judgment. *Id.* It is clear from his brief and the facts upon which this case rests, plaintiff's argument is based on the latter doctrine and, accordingly, we limit our review to a collateral estoppel analysis.

■ The elements necessary to invoke collateral estoppel are: (1) the issue decided in the prior adjudication mirrors that in the present action; (2) the prior adjudication resulted in a final decision on the merits; (3) the party against whom collateral estoppel may apply participated as "a party or in privity with a party to the prior adjudication;" and (4) the party against whom the doctrine may apply has had a full and fair opportunity to litigate the issue. *Miller v. Pool and Canfield, Inc.*, 800 S.W.2d 120, 124 (Mo.App.W.D.1990).

■ We disagree with plaintiff's contention the trial court erred in permitting the defense to elicit testimony regarding when plaintiff first notified defendant of his October 19, 1984 injury because the factual issue of whether plaintiff suffered from a work-related disability, as determined by the ALJ in the workers' compensation proceeding, differs from the question presented here as to whether defendant wrongfully discharged plaintiff for exercising his rights under the Workers' Compensation Act. Evidence concerning when plaintiff told defendant of his October 19, 1984 injury was relevant to the critical issue in this case, whether defendant discharged plaintiff for exercising his workers' compensation rights. If plaintiff told defendant of his October 19, 1984 injury the day before his termination, this could constitute relevant evidence regarding whether defendant had a retaliatory motive in terminating plaintiff. However, if notice of plaintiff's October 19, 1984 injury came after his termination, it could indicate defendant did not terminate plaintiff's employment in retaliation for his complaints of another injury. Such evidence was relevant because it demonstrated defendant's motivation in discharging plaintiff and, therefore, affects the issue of causation between defendant's actions and plaintiff's actions. Defendant's motivation is not addressed by the ALJ's award. Thus, the issue decided by the ALJ in the prior adjudication was not identical to the issue in the present action as required under the first prong of the collateral estoppel test.

■ Likewise, the trial court did not err in admitting into evidence Mueller's testimony regarding his previous doubts as to the work-related nature of plaintiff's injuries because it demonstrated the motivation for his actions. Additionally, it was necessary to contradict plaintiff's testimony indicating Mueller resented plaintiff for receiving workers' compensation benefits and encouraged him to pay his own medical costs or get the union's insurance plan to cover the medical costs.

■ Plaintiff's argument the trial court erred in overruling his objection to statements made by defense counsel during closing argument is more problematic. Plaintiff complains of the following exchange during closing argument:

[Defense counsel] It was two days after he was fired that he was very certain he had been injured on the 21st of February. Nothing prevented the filing of the claim on that new injury the same date he filed the claim on the first injury. Why? **I suggest to you maybe it really wasn't an injury, was no injury and maybe he had no reason to tell people about it because it didn't happen.** Maybe he was confused. But I don't know how he could be confused when as he has admitted very early on he had the services of a lawyer.

[Plaintiff's counsel] Your Honor, I have to object to him saying that maybe it wasn't a real injury since that contradicts the finding of the—

[Defense counsel] Your Honor, that evidence has been excluded and it's irrelevant, they didn't consider those issues.

[COURT] Counselor, since he's paraphrasing maybe I'm not going to have a problem with it but if he attempts to suggest that there is some direct evidence on that then you state your objection.

The trial court is possessed of broad discretion in the area of closing arguments. *Kelly by Kelly v. Jackson,* 798 S.W.2d 699, 704 (Mo. banc 1990). In ruling on the propriety of final argument, the challenged comment must be interpreted in light of the entire record and not in isolation. *Id.*

Looking at the entire record reveals the focus of defendant's closing argument was plaintiff's refusal to perform available work despite being medically released. According to defendant, this was the reason for plaintiff's discharge. We also note defense counsel made an identical statement earlier in the closing argument and plaintiff's counsel failed to object. The law is well-settled when a party fails to object to an allegedly erroneous argument at the time it is made, the claim of error is foreclosed from consideration and the objection is waived. *Beis v. Dias,* 859 S.W.2d 835, 841 (Mo.App.S.D. 1993). Plaintiff's objection when defense counsel repeated the complained of statement came too late. Although the subsequent remark would have been better left unsaid, it did not increase the prejudice to plaintiff.

Regarding plaintiff's argument the trial court prejudicially erred in giving defendant's withdrawal instruction withdrawing from the jury's consideration the ALJ's finding plaintiff suffered from work-related injuries on February 21 and October 19, 1984, we disagree.

The withdrawal instruction, patterned after M.A.I. 34.02 [1978 Revision], provided:

> The evidence of the outcome of plaintiff's workers' compensation claim is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

"Withdrawal instructions should be given when there is evidence which might mislead the jury in its consideration of the case as pleaded and submitted." *Klaus v. Deen,* 883 S.W.2d 904, 905 (Mo.App.E.D.1994). The trial court believed allowing the jury to consider the ALJ's finding plaintiff suffered from two work-related injuries, one of which was compensable, would likely cause the jury to confuse the finding with an actual ruling against the defense. We do not find otherwise. Plaintiff's second point on appeal is denied.

In point three, plaintiff claims the trial court erred in submitting the following instruction, defendant's converse, because the term "unable" was not supported by the evidence and the term "unwilling" was not "qualified":

> Your verdict must be for defendant if you believe defendant discharged plaintiff or otherwise dealt with him because plaintiff was unable or unwilling to perform the ordinary duties and responsibilities of plaintiff's employment.

This instruction was non-MAI and based upon *Self v. Lenertz Terminal, Inc.,* 854 S.W.2d 571 (Mo.App.E.D.1993). This court found in *Self* the instruction was proper because it represents a valid defense to a plaintiff's claim of wrongful discharge. *Id.* at 577.

An instruction must be supported by evidence from which the jury could reasonably determine issues submitted by the instruction. *Standard Leasing Corp. v. Missouri Rock Co., Inc.,* 693 S.W.2d 232, 236 (Mo.App.W.D.1985). In determining whether an instruction should have been given or withheld based on the evidence presented, the reviewing court views all the evidence in the light most favorable to the party offering the instruction and gives that party the benefit of all favorable inferences and disregards any evidence to the contrary. *Rogue v. Kaw Transport Co.,* 697 S.W.2d 254, 257 (Mo.App. W.D.1985).

At trial, plaintiff testified he told defendant on October 21, 1984, he was unable to perform his job because it was causing him too much pain. Plaintiff also stated he was not capable of performing the job of rig worker on October 22, 1984, the date of his termination, and he could not perform the job at the time of trial. Plaintiff further conceded defendant had offered his old job as rig worker back to him in March of 1985, thirteen months after plaintiff's original injury, if plaintiff could produce a statement from a physician stating he was capable of doing the work. Plaintiff did not produce such a statement and apparently made no response to defendant's offer. Based on this evidence,

we find there was substantial evidence to support the use of the word "unable" in the instruction.

Regarding plaintiff's argument it was error for the trial court to submit the instruction without qualifying the word "unwilling," we disagree. "Jurors are credited with ordinary intelligence, common sense and an average understanding of the English language." *Graham v. Goodman,* 850 S.W.2d 351, 355 (Mo. banc 1993). We do not believe a reasonable juror would have difficulty understanding the term "unwilling" as used in this instruction. Point denied.

Affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.