Ethel STEPHENSON, Respondent,

v.

RASKAS DAIRY, INC., Appellant.

No. ED 76698.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 6, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Ray A. Gerritzen, Law Office of Gerritzen & Gerritzen, St. Louis, for Respondent.

Douglas Willard King, Gregg Michael Lemley, Thomas C. Walsh, St. Louis, for Appellant.

SHERRI B. SULLIVAN, Judge.

Raskas Dairy, Inc. (Appellant) appeals from a jury verdict in favor of Ethel Stephenson (Respondent) awarding her $360,000 in compensatory damages and $240,000 in punitive damages for her retaliatory discharge claim against Appellant, her former employer. We reverse.

Appellant is a dairy business, primarily engaged in the production and packaging of cream cheese products. Respondent was employed by Appellant from March 8, 1968 until January 21, 1996, when she was laid off. Pursuant to her union contract, her employment was terminated three years later, on January 21, 1999. During the time Respondent worked for Appellant, she worked in a variety of capacities such as: (1) working on the cream cheese line, which included thirty pound weight lifting, (2) three pound box line, (3) the portion pack, where the pallets weigh thirty to fifty pounds, (4) the Jones machine, (5) the filler job, (6) shrink wrap, and others.

In 1982, Respondent sustained a ruptured lumbar disc while employed by Appellant, had surgery and was out of work for one year and three weeks. Thereafter Respondent had a permanent medical restriction from doing any work involving lifting more than thirty pounds. Respondent filed a workers' compensation claim for that injury. Respondent testified that she experienced no discrimination or retaliation for that claim. Respondent began experiencing pain and numbness in her wrists in late 1992, and was eventually diagnosed with bilateral carpal tunnel syndrome. Respondent's condition worsened in 1994. On January 10, 1994, Appellant filed a report of a work-related injury with the Division of Workers' Compensation.

On May 23, 1994, Respondent had bilateral carpal tunnel surgery, and was off work for eleven weeks. Respondent testified she experienced no discrimination or retaliation up through the time of her surgery. Respondent was granted a workers' compensation leave of absence following her surgery from May through early August 1994.

Respondent returned to work in August 1994. Respondent was released by her physician to work regular duty, with a recommendation that she should be assigned to a lighter job to avoid the possibility of injury to her wrists. On October 6, 1994, Respondent's physician released her to full duty work, with no medical restrictions related to her wrists. Respondent maintained that she was physically unable to do the portion-pack job, the shrink wrap job, the Grade A room job, the turning the cold cheese job, or the job of peeling wrappers off bars of cream cheese which needed to be sent back through the production line for reprocessing. Eventually, in mid–1995, Respondent informed Appellant's personnel manager that there were no regular dairy-worker jobs that she was able to perform.

Respondent brought in a vocational consultant, HealthSouth Rehabilitation Center (HealthSouth), to study the plant and identify any jobs that Respondent could perform. HealthSouth studied the tasks performed by the various dairy workers at the plant and issued a report on June 23, 1995. The report identified three positions that HealthSouth believed met Respondent's stated medical restrictions. However, Respondent stated she could not perform those jobs.

On April 3, 1995, Respondent filed a workers' compensation claim for permanent partial disability connected with her wrist injury. In June 1995, Appellant assigned Respondent to a lid-labeling job in the Hamilton warehouse across the street from the plant. Appellant claims it sent

Respondent to the Hamilton warehouse to perform the lid labeling job because that was where Appellant stored its unused packaging materials. Respondent maintains that the working conditions at the Hamilton warehouse were deplorable, and that Appellant sent her there as retaliation for filing her 1995 workers' compensation claim.

Appellant raises five points on appeal. We find Appellant's first point dispositive of this appeal. In its first point, Appellant maintains the trial court erred in overruling Appellant's Motions for Directed Verdict and for Judgment Notwithstanding the Verdict because Respondent failed to make a submissible case of Workers' Compensation Retaliation under Section 287.780 RSMo (1994),[1] in that an employer may terminate an employee who is unable or unwilling to perform the ordinary duties and responsibilities of her employment. Appellant asserts Respondent herself testified that she was physically unable to perform any job whatsoever at her place of employment and that she had so informed her employer prior to her layoff.

When reviewing a failure to grant a directed verdict for the defendant, the evidence is viewed in the light most favorable to the plaintiff, the plaintiff is afforded all reasonable inferences from the evidence, and any of the defendant's evidence that contradicts the plaintiff's claim is disregarded. *Crabtree v. Bugby,* 967 S.W.2d 66, 70 (Mo.banc 1998). If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper. *Id.* In reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, this court views the evidence in the light most favorable to the nonmoving party and gives that party the benefit of all reasonable inferences. *Wolfe v. Central Mine Equipment Co.,* 895 S.W.2d 83, 87 (Mo.App. E.D.1995). Granting a judgment notwithstanding the verdict is an extreme measure which

should be done only when all of the evidence and reasonable inferences to be drawn therefrom are so strongly against the opponent of the moving party's case there is no room for reasonable minds to differ. *Wolfe,* 895 S.W.2d at 86–87.

Section 287.780 provides:

No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.

The above statute was enacted into law against the backdrop of the "at will" doctrine, which allows an employer to fire an employee without a durational contract for any reason or for no reason. *Crabtree,* 967 S.W.2d at 70. The workers' compensation act did not abolish the at will doctrine but rather provided a limited exception which allows an action where there was an exclusive causal relationship between the discharge and the employee's exercise of rights as granted under Chapter 287. *Id.* The purpose of the workers' compensation law, including the rule of liberal construction, is to compensate workers for job-related injuries; it is not to insure job security. *Id.* at 72.

To prevail in an action for retaliatory discharge under Section 287.780, a plaintiff must prove four elements: (1) plaintiff's status as an employee of defendant before the injury; (2) plaintiff's exercise of a right granted by the Act; (3) employer's discharge of or discrimination against the plaintiff; and (4) an exclusive causal relationship between plaintiff's actions and defendant's actions. *St. Lawrence v. Trans World Airlines, Inc.,* 8 S.W.3d 143, 149 (Mo.App. E.D.1999); *Crabtree,* 967 S.W.2d at 70; *Wolfe,* 895 S.W.2d at 87. Appellant challenges the last element. Causation does not exist for purposes of a workers' compensation retal-

---

1. All further statutory references are to RSMo (1994), unless otherwise indicated.

iation claim if the basis for the employee's discharge is valid and nonpretextual. *Wolfe*, 895 S.W.2d at 87. Nothing in workers' compensation law requires an employer to retain an injured employee when he has recovered from his injuries and is declared able to return to work but cannot or will not perform the duties required by his job. *Id.*

On October 6, 1994, Respondent was released to full duty work, with no medical restrictions related to her wrists. Respondent maintained that she was physically unable to do the portion-pack job, which was her regular job, the shrink wrap job, the Grade A room job, the turning the cold cheese job, or the job of peeling wrappers off bars of cream cheese which needed to be sent back through the production line for reprocessing. Eventually, in mid-1995, Respondent informed Appellant's personnel manager that there were no regular dairy-worker jobs that she was able to perform. Appellant brought in Health-South to study the plant and identify any jobs that Respondent could perform. HealthSouth issued a report on June 23, 1995, identifying three positions that HealthSouth believed met Respondent's stated medical restrictions. However, Respondent stated she could not perform any of those jobs.

At this point Appellant gave Respondent the labeling job in the Hamilton warehouse, which involved using a labeling gun to put stickers on the lids of plastic cream cheese tubs. Respondent claims that the Hamilton warehouse was a deplorable place to work, and that she was assigned to the labeling work at the warehouse in retaliation for having filed her workers' compensation claim. Respondent's complaints about working in the Hamilton warehouse included the following:

(1) insects, mice and rats were present in the warehouse;

(2) noise and fumes from the propane-powered forklift trucks;

(3) dust;

(4) Respondent had to go across the street to use the bathroom because the one in the warehouse was unclean, the plumbing was faulty, and the door did not shut and lock completely;

(5) Respondent had to go across the street to retrieve her paycheck; and

(6) the workers at the main plant did not invite Respondent to the Christmas party.

Respondent worked at the Hamilton warehouse the latter half of 1995, and by December 1995, Respondent announced that physically, she could no longer do the lid labeling work and that there were no jobs at Appellant's plant that she could perform.

According to the law set out in *Wolfe*, 895 S.W.2d at 87, Appellant was entitled to terminate Respondent if she was not able to perform her job, or any of the jobs offered to her. Nothing in workers' compensation law requires an employer to retain an injured employee when she has recovered from her injuries and is declared able to return to work but cannot or will not perform the duties required by his job. *Id.* Both Dr. Caplin, Respondent's doctor, and Dr. Ollinger, a surgeon chosen by Appellant to examine Respondent, claimed her carpal tunnel surgery had been completely successful. Dr. Caplin reported that Respondent was able to work with no limitations. However, Respondent insisted that she could not perform any of the jobs at Appellant's dairy. This is a legitimate and nonpretextual reason to fire Respondent, and it defeats the exclusive causation element.

Respondent claims that Appellant could have offered her a position as an instructor or supervisor. Al Thompson (Thompson), a maintenance mechanic and chief shop steward at the dairy, testified that the instructor job to which Respondent referred was a temporary assignment lasting a few weeks, which was once given to an employee on restricted duty. Thompson testified that it was not a regular or per-

manent job and had never existed as a regular bid job. That particular employee returned to her regular job after the temporary assignment. In this specific case, Respondent would be unable to similarly return to any regular job because she denied the ability to do any of the jobs at Appellant's plant.

The supervisor position would require a promotion for Respondent, and a loss of her union membership, which Respondent stated she was unwilling to give up. There is no evidence that Respondent ever requested or even thought of a supervisor position until trial. Additionally, Respondent presents no case law supporting an employer's duty to promote its employee when that employee cannot perform her normal duties.

Respondent has not established that the exclusive cause of her termination was the exercise of a right under the workers' compensation law. There is ample evidence that Appellant fired Respondent because she was not able to perform any of the jobs available at Appellant's dairy plant. Respondent insists that Appellant should have created a regular instructor job for her, which was not needed at the plant, or to promote her to supervisor. However, the purpose of the workers' compensation law, including the rule of liberal construction, is to compensate workers for job-related injuries; it is not to insure job security. *Crabtree,* 967 S.W.2d at 72.

Respondent failed to make a submissible case of discriminatory discharge, in that she did not prove that the exclusive cause of her discharge was the exercise of her workers' compensation rights. On the contrary, she presented ample evidence that she could not, and would not, perform any of the existing jobs at Appellant's dairy, which supported Appellant's reasons for discharging her. Accordingly, we reverse the judgment of the trial court. We decline to address the remaining points on appeal, as Appellant's first point is dispositive of this appeal.

CRANE, P.J. and ROBERT G. DOWD, Jr., J., concur.