Ronald LASKY, Edward Boni, William J. Kusmec, Russell Whitener, Shelly Stanley Harmon, Alan Dwayne Henry, and Vondell Jackson, Respondents,

v.

UNION ELECTRIC COMPANY, Appellant.

No. 79235.

Supreme Court of Missouri, En Banc.

Jan. 21, 1997.

James J. Virtel, Ann E. Buckley, St. Louis, for Appellant.

J.W. Gabriel, Christopher A. Wagner, St. Louis, for Respondent.

Hugh F. Young, Jr., Reston, Robert T. Berendt, Bruce Ryder, St. Louis, Patrick W. Lee, Robert P. Charrow, Washington, for Amicus.

### PER CURIAM.[1]

This jury-tried personal injury case arises out of a transformer rupture that occurred on April 22, 1984. Plaintiffs [2] are police officers and firefighters who sued defendant Union Electric for personal injuries they sustained when responding to the transformer rupture. Defendant appeals the jury awards of $11,000 to plaintiff Ronald Lasky and $10,000 to each of the other plaintiffs. Defendant asserts the trial court erred in: (1) submitting defective verdict directors to the jury; (2) admitting testimony of plaintiffs' expert witness; (3) allowing plaintiffs' counsel to read the Toxic Substances Control Act to the jury; and (4) denying defendant's motion for directed verdict. We reverse and remand for a new trial.

The facts viewed in the light most favorable to plaintiffs are as follows: On April 22, 1984, a Union Electric underground transformer ruptured, sending warm liquid and steam up though a grate in the sidewalk.

Plaintiff Ronald Lasky, a police officer, was the first to arrive at the scene. He first believed a steam pipe had broken when he saw the black liquid rising like a "geyser" from the sidewalk two stories into the air. Plaintiff Lasky helped Maple Hayes,[3] who had been soaked with the liquid when the transformer ruptured, walk to the corner of the street, away from the liquid. Lasky testified he got "a lot" of liquid on his outer clothing from assisting Maple Hayes. When Union Electric employees arrived at the scene, an employee told Lasky the liquid was "acid and oil."

Approximately one week after the incident Lasky developed a rash on his right arm. He was examined by a police department doctor who treated the rash with a salve. Lasky's rash recurred for approximately one year and, eventually, disappeared. At the time of trial in 1994, Lasky had not seen a doctor for his rash since 1984.

Plaintiff William Kusmec, a St. Louis police officer, was at the scene for approximately 15–20 minutes. Having never had any type of rash before, Kusmec developed a rash ten days after the incident. The rash extended from his abdomen to under his right arm. It occasionally flares up under his right arm, but he has not seen a doctor about the rash since 1984.

Plaintiff Edward Boni, a police officer, was at the scene for approximately one hour, supervising the other officers and determining whether police department procedures were being followed. Boni first noticed a rash on his stomach a month after the incident. After seeing a doctor, Boni applied a cream to the rash for a day or two, and it disappeared. At the time of trial, Boni continued to experience red welts on his chest periodically, every two to three years.

Plaintiff Russell Whitener, a St. Louis police officer, was at the scene for an hour. Whitener first noticed a rash on his chest a week after the incident. He has suffered numerous rashes on his shins and left arm, as well.

Plaintiff Alan Henry, a St. Louis firefighter, described the scene when he arrived as a light mist in the air with steam rising off nearby buildings and moisture 10–20 feet up

1. The appeal in this case was originally decided by the Court of Appeals, Eastern District, in an opinion written by The Honorable Clifford H. Ahrens. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

2. Six of the seven plaintiffs were married at the time of trial. Their spouses asserted loss of consortium claims. The trial court directed verdicts in favor of defendant on these claims. The directed verdicts were not appealed; thus, the term "plaintiffs," as used in this opinion, refers only to those respondents listed above.

3. Maple Hayes is not a party to this lawsuit.

the sides of the buildings. Henry testified the misting stopped 10–15 minutes after he arrived and that he and his co-workers stayed at the scene for at least two hours. Henry noticed a rash the size of a half dollar on his forearm a year or so after the incident. At the time of trial he still had small blotches that occasionally reappeared.

Plaintiff Shelly Harmon is a St. Louis firefighter who responded to the incident. Harmon has had a few rashes since the incident, the first developing two years after the transformer rupture.

Plaintiff Vondell Jackson, a St. Louis firefighter, was at the scene for two hours. He testified that the liquid got all over his equipment and clothing, but his forehead was the only place it touched his skin. Jackson developed a rash on the back of his right hand and the left side of his back some time after the incident. He also developed the same rash around his eyes and down his face. The rash on his hand and back only lasted about a week, but the rash on his face swelled up and turned dark, requiring treatment and continued medication.

All plaintiffs testified Union Electric employees did not warn them that the transformer cooling fluid contained PCBs. However, Alan Henry was warned by a Union Electric employee to stay out of the "oil." Defendant did not contact the police or fire departments to advise those at the scene of safety procedures for decontamination and clean-up following exposure, even though it advised Barnes Hospital employees on the procedure for decontaminating Ms. Hayes. Plaintiffs testified they knew nothing of PCBs until they saw an article about the incident in a newspaper a few days later. Because they had not been warned, plaintiffs took no extra precautions in cleaning up after the incident.

Defendant's fourth point [4] asserts error by the trial court in submitting instructions numbered 8, 12, 16, 20, 24, 28 and 32, plaintiffs' verdict directors, to the jury. The verdict directors, which are identical except for the name of each plaintiff, state:

Your verdict must be for plaintiff _____ if you believe:

First, defendant knew or by using ordinary care should have known that plaintiff had come into contact with the cooling fluid from defendant's transformer which contained polychlorinate biphenyls (PCBs), and

Second, defendant knew or by using ordinary care should have known that plaintiff's contact with the cooling fluid containing polychlorinated biphenyls (PCBs) presented a risk of bodily harm, and

Third, defendant did not give an adequate warning that the transformer cooling fluid contained polychlorinated biphenyls (PCBs) and of the need and manner to clean the transformer fluid from plaintiff's body and clothes, and

Fourth, defendant was thereby negligent, and

Fifth, as a direct result of said negligence, plaintiff _____ sustained damage.

Defendant argues the verdict directors assumed two disputed ultimate facts and erroneously withheld those issues from the jury. Defendant asserts that the first paragraph of the instructions assumed plaintiffs came into contact with the transformer fluids that contained PCBs and that the second paragraph assumed plaintiffs' contact with the PCBs presented a risk of bodily harm. In response, plaintiffs argue these two facts were not disputed and, thus, were not necessary to the verdict directors. Plaintiffs assert each of them testified that he had contacted the cooling fluid from defendant's transformer and defendant presented no evidence to refute those claims. However, several plaintiffs testified only that they had noticed a mist in the air that could not be avoided but did not testify that they had touched the "oil" or cooling fluid others had contacted. Defendant's expert, Robert Kane, explained the mist was steam from water contained in the

---

4. Because defendant's fourth point is dispositive, we address it first.

transformer. Kane testified the pressure produced by the steam inside the tank caused the transformer to rupture, sending the steam and a small amount of cooling fluid through the grate. There was also evidence that only two gallons of the three hundred gallons of cooling fluid contained in the transformer escaped during the rupture.

Plaintiffs also contend there was no dispute that contact with the cooling fluid, which contained PCBs, presented a risk of bodily harm. Defendant's expert witness, Dr. Thomas Milby, testified a singular exposure, like the transformer rupture here, presented no risk of harm to those exposed to the cooling fluid.

For the above reasons, we find the plaintiffs' contact with the cooling fluid from defendant's transformer and the risk of bodily harm presented by such contact were disputed facts for the jury's determination.

Alternatively, plaintiffs contend that an instruction is not necessarily erroneous when an essential element is implied from other findings made by the jury. *Plaintiffs cite Reed v. Sale Memorial Hosp. and Clinic,* 698 S.W.2d 931, 938 (Mo.App.1985), in support of this contention. In *Reed,* the court of appeals cited a case by this Court for the proposition that "an instruction is not erroneous when a finding of the essential element is necessarily implied from the other findings required." *Id.,* citing *Gathright v. Pendegraft,* 433 S.W.2d 299, 311 (Mo.1968).

Defendant relies on a more recent case as support for its contention that plaintiffs' verdict directors are defective. *See Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224 (Mo. banc 1994). In *Spring,* the plaintiff sued a bus driver and the transportation authority for injuries she received when the bus in which she was riding pulled away from the bus stop and then suddenly stopped. *Id.* at 226. The verdict director submitted to the jury in *Spring* stated, in part:

> First, defendant ... caused the bus to move forward and suddenly stop when he knew, or should have known, that plaintiff

had not yet reached a place of safety in the bus ...

*Id.* The appellants in *Spring* argued the language used in the verdict director informed the jury that plaintiff was not in a place of safety when the driver started the bus, rather than allowing the jury to make that determination itself. This Court agreed with appellants, holding whether plaintiff had reached a place of safety before the driver started the bus was an ultimate fact and, as such, should be separately hypothesized in the jury instruction. *Id.* at 227. The Court explained that by assuming that fact, the instruction took the determination of an ultimate fact away from the jury and, thus, submission of the instruction constituted prejudicial error. *Id.*

The purpose of the verdict directing instruction is to hypothesize propositions of fact to be found or rejected by the jury. *Id.* at 226. The instruction must hypothesize the facts essential to the plaintiff's claim. Assuming a disputed fact is error. *Id.*; *Brown v. Van Noy,* 879 S.W.2d 667, 673 (Mo.App.1994).

In *Brown,* the court of appeals found an instruction similar to that in the instant case to be erroneous and prejudicial. *Brown,* 879 S.W.2d at 673. Myron Brown sued the owner of a pub for damages as a result of injuries sustained when Brown was hit by another man inside the pub. *Id.* at 670. At issue was whether the pub owner knew of the violent tendencies of Brown's assailant. *Id.* at 673. The verdict director submitted to the jury read, in pertinent part:

> ... Defendant ... knew or should have known that [the assailant] was a person with vicious tendencies likely to inflict injury upon others ...

The *Brown* court determined that before a jury could assess liability under plaintiff's cause of action it must find: (1) that the assailant was a person with vicious tendencies likely to inflict personal injury upon others and (2) that defendant knew of those tendencies. The court concluded the instruc-

tion required the jury to make a determination on the latter element while implying the former element. Relying on *Spring,* the *Brown* court determined the implied finding contained in the jury instruction assumed an ultimate disputed fact, which made the instruction defective. *Id.* The court emphasized that each essential element of the cause of action should be set out in a separate paragraph of the verdict director. *Id.*

Given the authority cited by both parties, the more recent decision in *Spring* is more persuasive. The Court in *Spring* had the benefit of *Gathright* and decided each element should be explicitly presented to the jury. We find similarities between the instructions in *Spring* and the instant case. We believe the verdict directors in the instant case erroneously assumed disputed facts. Moreover, the instant case mirrors *Brown* in that the verdict director presented the knowledge element to the jury but assumed the facts of which defendant was alleged to have had knowledge. The issues of whether plaintiffs contacted the cooling fluid from defendant's transformer and whether such contact presented a risk of bodily harm were ultimate facts for determination by the jury. Instructions 8, 12, 16, 20, 24, 28, and 32 assumed these disputed facts and, thereby, removed the issues from the jury's determination. Therefore, submission of these defective instructions constituted prejudicial error, which requires this Court to reverse and remand for a new trial.

■ Defendant's first point contends the trial court erred in denying defendant's motion for directed verdict. We address this point of error because defects in verdict directors are irrelevant if plaintiffs have not made a submissible case. Defendant argues plaintiffs failed to make a submissible case for numerous reasons. When the asserted error is failure to grant a directed verdict for the defendant, this Court examines the evidence presented at trial to determine whether plaintiff submitted substantial evidence that tends to prove the facts essential to plaintiff's claim. *Schaffer v. Bess,* 822

S.W.2d 871, 876 (Mo.App.1991). In so doing, the evidence is viewed in the light most favorable to the plaintiff, affording the plaintiff all reasonable inferences from the evidence and disregarding defendant's evidence that contradicts the plaintiff's claims. *Id.* If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper. *Id.*

■ First, defendant argues plaintiffs presented no evidence that it is possible to develop skin rashes from a single exposure to PCBs. To the contrary, Dr. Ghani, plaintiffs' medical expert, testified he believed to a reasonable degree of medical certainty that plaintiffs' exposure to PCBs caused the skin rashes that subsequently developed. The trial court did not commit reversible error in finding under the law at the time of trial that this testimony constituted substantial evidence that tended to prove that plaintiffs developed skin rashes from a single exposure to PCBs. However, on remand the trial court shall be guided by section 490.065, RSMo, in evaluating the admission of expert testimony.

■ Second, defendant argues plaintiffs presented no evidence that defendant knew or should have known plaintiffs were exposed to PCBs at the scene of the explosion. However, there was evidence that defendant's employees were present at the scene when plaintiffs were there; at least one plaintiff was warned by a Union Electric employee to stay away from the cooling fluid; and there is evidence that the explosion had sprayed cooling fluid on the sidewalk, the street and surrounding buildings. For these reasons, there is substantial evidence that defendant knew or should have known plaintiffs had been exposed to PCBs.

Third, defendant argues that plaintiffs presented no admissible evidence that their skin rashes were caused by exposure to PCBs. Our determination that Dr. Ghani's testimony was admissible under the law at the time of trial makes this argument moot.

Defendant's final three arguments under this point focus on evidence that contradicts plaintiffs' allegations of defendant's negli-

gence, plaintiffs' damages and a causal relationship between the two. Review of the record on appeal reveals plaintiffs made a submissible case by presenting substantial evidence of each essential element of their claims. These contradictions in the evidence admitted at trial go to the weight of the evidence, not the submissibility of the case. It is the fact finder's duty to weigh the evidence. Thus, defendant's final three arguments under point one will not be addressed.

Defendant, in its fifth point, argues the trial court erred in allowing plaintiffs' counsel to read portions of a federal statute to the jury. Plaintiffs' counsel read from three sections of the Toxic Substances Control Act, 15 U.S.C. §§ 2601, 2604, and 2605 (1982). Defendant asserts the statute is irrelevant and immaterial to the issues of the case, misleading to the jury, and prejudicial to defendant. Plaintiffs contend the statute was read to the jury with the purpose of informing them that the manufacture of PCBs had been banned due to their toxicity. Plaintiffs claim reading the statute did not mislead the jury or prejudice the defendant.

The courts of this state have held reading a statute to the jury is improper, and if, in reading the statute, counsel misstates the law or misleads the jury, it is reversible error. *State v. Watson,* 672 S.W.2d 701, 703 (Mo.App.1984), *citing Domijan v. Harp,* 340 S.W.2d 728, 734 (Mo.1960). Here, reading the statute to the jury was error; consequently, it should not be allowed on retrial of this matter. Because the case must be reversed and remanded for instructional error, we need not reach the issue of whether reading the statute to the jury constituted reversible error.

We need not address the defendant's remaining points of law. As previously noted, the court on retrial in evaluating the admission of expert testimony shall be guided by § 490.065, RSMo.

Reversed and remanded.

All concur.