Autumn CRABTREE, Respondent/Cross–Appellant,

v.

Hannelore E. BUGBY, d/b/a Silver Maple Farm, et al., Appellants/Cross–Respondents.

No. 80441.

Supreme Court of Missouri,
En Banc.

April 30, 1998.

---

Ira M. Potter, St. Louis, for Appellants/Cross–Respondents.

Kevin A. Nelson, St. Louis, for Respondent/Cross–Appellant.

HOLSTEIN, Judge.

Silver Maple Farm appeals from a jury verdict awarding Autumn Crabtree actual damages of $42,000 and punitive damages of $36,000 on her claim for retaliatory discharge. Crabtree cross-appeals the trial court's dismissal of her claims for slander and civil conspiracy and claims the trial court erred in several pretrial rulings. By order of a majority of the judges participating, the court of appeals transferred the case here after opinion. *Mo. Const. art. V, sec. 10.* Because the trial court erred in submitting the verdict directing instruction in the retaliatory discharge claim, the judgment is reversed and that claim is remanded for new trial.

## I.

Silver Maple Farm is a sole proprietorship owned by Hannelore E. Bugby, providing boarding and grooming services for animals. Autumn Crabtree began working at Silver Maple Farm in May 1993 as a groomer. Crabtree's compensation was 50% of the grooming charges. Her immediate supervisor was Sue Crannick, the grooming manager. Mark Clancy was general manager of the farm and oversaw all operations of the kennel, including grooming, retail and boarding. Clancy reported to Paul Schifano, a veterinarian who oversaw the entire operation but had limited contact with any employees. In July 1993, Silver Maple Farm raised Crabtree's pay to an hourly rate of $7.50. Two months later, her pay was raised to $8.00 an hour. Two months after that, in November 1993, Silver Maple Farm promoted Crabtree to assistant manager of the grooming department and gave her a salary of $18,000 per year.

On April 26, 1994, Crabtree injured herself while lifting a dog into a bathtub. She reported her injury to Crannick and Clancy. She stopped working on April 28, 1994. Crabtree filed a workers' compensation claim for her injuries. The injuries required surgery and physical therapy.

In December 1994, Crabtree visited Silver Maple Farm to purchase some cat food. While there, she told Crannick and Clancy of her intent to come back to work. Within a short time, Silver Maple Farm reorganized its grooming department. Clancy fired Crannick and created a new position of grooming supervisor. The new supervisor was to meet all customers when they came in, schedule the grooming appointments, and help with the grooming. Under the new structure, Clancy decided to take a greater role in the direct supervision of the grooming employees. Clancy hired Rachel Champion as the new supervisor. Champion did not work at Silver Maple Farm prior to being hired as the new supervisor. On January 19, 1995, Crabtree returned to work. There she discovered that Crannick had been replaced with Champion. Crabtree did not return to her former salary and position as assistant manager. Instead, Crabtree worked again as a groomer and received an hourly wage of $8.65.

Prior to her injury, Crabtree had not received any written disciplinary reports. However, upon her return to work, she began to clash with the new supervisor and Clancy. In an eight-day period, Clancy wrote four disciplinary reports. These reports included 1) that Crabtree had left a dog in a restraining noose in a tub, 2) that Crabtree had taken an unauthorized break, 3) that she had called in sick less than an hour before her shift started, and 4) a claim that Crabtree copied confidential client information in her own journal. Crabtree denied at trial that any of the four events occurred.

On February 10, 1995, Clancy met with Crabtree in the employee break room. At this meeting, Clancy accused Crabtree of copying confidential client information. Crabtree denied the allegation, but Clancy stated that he believed his sources. He then informed Crabtree that Silver Maple Farm was terminating her employment based on the events in the written disciplinary reports.

After losing her job at Silver Maple Farm, Crabtree suffered severe financial difficulty resulting in her and her children moving from place to place, with a brief stay in a homeless shelter. Since her dismissal, Crabtree has received counseling and has been diagnosed as suffering from post-traumatic stress disorder.

On March 2, 1995, Crabtree brought suit against Silver Maple Farm and Clancy. She later amended her petition to add Champion and Schifano as defendants. Crabtree alleged that Silver Maple Farm had fired her in retaliation for filing a workers' compensation claim, in violation of sec. 287.780,[1] and that there was a "causal connection" between her filing the workers' compensation claim and the discharge.

The trial began on August 21, 1996. At the close of the plaintiff's evidence, the trial court dismissed Crabtree's claims for slander and civil conspiracy. The case was submitted to the jury solely on the retaliatory dis-

---

1. All references to statutes are to RSMo 1994 unless stated otherwise.

charge claim. Following entry of a judgment for both compensatory and punitive damages, the parties appealed.

## II.

Section 287.780 provides, "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer." In *Hansome v. Northwestern Cooperage Co.*, 679 S.W.2d 273 (Mo. banc 1984), this Court noted that the above statute was enacted into law against the backdrop of the "at will" doctrine, which allows an employer to fire an employee without a durational contract for any reason or for no reason. *Id* at 275 n. 2. The workers' compensation act did not abolish the at will doctrine but rather provided a limited exception which allows an action where there was an exclusive causal relationship between the discharge and the employee's exercise of rights granted under chapter 287 RSMo 1978. *Id.* The Court concluded that the action authorized by the statute has four elements: (1) plaintiff's status as an employee of defendant before injury, (2) plaintiff's exercise of a right granted by chapter 287, (3) employer's discharge of or discrimination against plaintiff, and (4) an exclusive causal relationship between plaintiff's action and defendant's actions. *Id.* at 275.

It is true that plaintiff's petition did not use the word "exclusive" in describing the cause of the discharge. A more precise pleading would be preferable. However, in determining whether a petition states a cause of action, all allegations of the petition are taken as true, and all reasonable inferences are given in favor of the pleading. *Ritterbusch v. Holt*, 789 S.W.2d 491, 492 (Mo. banc 1990). Here the petition invokes substantive principles of law entitling plaintiff to relief. A petition is not to be dismissed for mere lack of definiteness or certainty or because of informality in the statement of an essential fact. *Merriman v. Caton*, 395 S.W.2d 106, 109 (Mo.1965). The pleadings here allege the discharge was in violation of sec. 287.780 and that a causal relationship existed between plaintiff's filing of a workers' compensation claim and her discharge. The pleadings are sufficient to overcome a motion to dismiss for failure to state a claim.

## III.

Silver Maple Farm next appeals the trial court's denial of its motion for a directed verdict at the close of the evidence. Silver Maple Farm asserts that Crabtree did not establish by substantial evidence that the exclusive cause of her discharge was the filing of a workers' compensation claim.

When reviewing a failure to grant a directed verdict for the defendant, the evidence is viewed in the light most favorable to the plaintiff. The plaintiff is afforded all reasonable inferences from the evidence and any defendant's evidence that contradicts the plaintiff's claim is disregarded. *Hansome*, 679 S.W.2d at 274; *Lasky v. Union Electric Co.*, 936 S.W.2d 797, 801 (Mo. banc 1997). "If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper." *Lasky*, 936 S.W.2d at 801. A plaintiff's testimony alone, even if contradicted by the defendant's evidence, can be enough to support a retaliatory discharge claim to a jury. *Hansome*, 679 S.W.2d at 275.

Crabtree presented evidence that she received less pay and a lower position when she returned to work. Crabtree also presented evidence that she received no disciplinary reports before filing a workers' compensation claim and she received four disciplinary reports within nine days upon her return to work. Crabtree denied that the events in the disciplinary reports ever occurred. From this evidence, a reasonable juror could conclude that Silver Maple Farm discriminated against and fired Crabtree solely because she had filed a workers' compensation claim. The trial court properly denied the motion for directed verdict.

## IV.

Silver Maple Farm further argues that the trial court erred when it denied its motion for judgment notwithstanding the

verdict because Crabtree did not present sufficient evidence that Silver Maple Farm acted with evil motive or reckless indifference to Crabtree's rights. In reviewing the trial court's denial of such motion for judgment notwithstanding the verdict in a punitive damages case, the evidence is examined in a light most favorable to the party against whom judgment is sought. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 366 (Mo. banc 1993).

Crabtree presented evidence of repeated disciplinary actions within a short period of time, evidence that the violations were false, evidence of demotion and a pay cut, and evidence that she was put on probation but never notified. Viewed in the light most favorable to Crabtree, the factfinder could have concluded that Silver Maple Farm acted intentionally or maliciously by engaging in a pattern of harassment or by intentionally creating a false paper trail to cover its scheme to fire her.

## V.

■ At the close of all the evidence, Crabtree offered a verdict directing instruction regarding her retaliatory discharge claim. The court accepted the instruction over Silver Maple Farm's objection. The verdict director submitted to the jury by the court read as follows:

Your verdict must be for the plaintiff if you believe:

First, that plaintiff while employed by the defendant exercised certain of her rights under the workers' compensation law by filing a claim for compensation, and,

Second, as a direct result of plaintiff's filing a claim for compensation, defendant discharged plaintiff, and

Third, as a direct result of such discharge, plaintiff sustained damages.

The trial court also submitted an instruction allowing the jury to award Crabtree punitive damages.

Silver Maple Farm asserts that the trial court erred by allowing the jury to find for Crabtree if she was fired "as a direct result of" filing a workers' compensation claim. Silver Maple Farm argues that the filing of the

workers' compensation claim must be found to be the "exclusive" cause of Crabtree's firing in order for the jury to return a verdict. The liberal reading accorded pleadings and the permissive inferences applicable to determining sufficiency of the evidence are not available when reviewing the propriety of a jury instruction.

As previously noted, one element of an action for damages against an employer under sec. 287.780 is an exclusive causal relationship between the plaintiff's cause of action and the discharge. Because the verdict director did not hypothesize that the exclusive cause of plaintiff's discharge was the filing of the workers' compensation claim, the instruction did not accurately state the law. The instruction is erroneous in permitting the jury to return a verdict for plaintiff even though the reason for her discharge included causes other than the filing of a workers' compensation claim.

Crabtree patterned her verdict director after the verdict director in *Wiedower v. ACF Industries, Inc.*, 715 S.W.2d 303 (Mo.App. 1986). However, the court in *Wiedower* did not address whether using only "direct result" in the verdict director was proper. Furthermore, the *Wiedower* court recognized that there must be "an exclusive causal relationship" between the exercise of workers' compensation rights and the termination. *Id.* at 305. Crabtree also relies on *Reed v. Sale Memorial Hosp. and Clinic*, 698 S.W.2d 931 (Mo.App.1985). However, like *Wiedower*, *Reed* did not directly endorse the instruction used here. Rather, it noted that the instruction "could easily have been improved" but the court "perceived no prejudicial error on any ground briefed or argued." *Id.* at 939.

■ Once this Court by case law has resolved the elements of a cause of action pursuant to sec. 287.780, neither the trial court nor the court of appeals is free to redefine the elements in every case that comes before them. *Mo. Const. art. V, sec. 2.* Similarly, this Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court is not a

satisfactory basis for violating the doctrine of stare decisis, at least in the absence of a recurring injustice or absurd results.

If there is an injustice or an absurdity, it would be for this Court to abandon the requirement that the discharge be exclusively caused by the exercise of rights pursuant to the workers' compensation law. Under that rule, an employee who admittedly was fired for tardiness, absenteeism, or incompetence at work would still be able to maintain a cause of action for discharge if the worker could persuade a factfinder that, in addition to the other causes, *a* cause of discharge was the exercise of rights under the workers' compensation law. Such rule would encourage marginally competent employees to file the most petty claims in order to enjoy the benefits of heightened job security.

■ The purpose of the workers' compensation law, including the rule of liberal construction, is to compensate workers for job-related injuries; it is not to insure job security. *Hansome*, 679 S.W.2d at 277 (Donnelly, J., dissenting). Nothing in the plain language of sec. 287.780 expresses such a legislative intent. In addition, no words express any intent to wholly abolish the employment at will doctrine for those who have filed workers' compensation claims. We decline the invitation to give the statute such an expansive construction. Those who disagree with the statute and this Court's precedent analyzing the statute are free to seek redress in the legislative arena.

### VI.

■ Crabtree raises five points on cross-appeal. Point one reads as follows:

THE TRIAL COURT ERRED IN DENYING RESPONDENTS [sic] MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II AND III OF HER FIRST AMENDED PETITION BECAUSE IT DID NOT FOLLOW THE SUBSTANTIVE LAW.

■ Rule 84.04(d) requires every point relied on to contain three components: (1) a concise statement of the challenged ruling of the trial court; (2) the rule of law which the court should have applied; and (3) the evidentiary basis to support the application of that rule of law. *Rule 84.04(d)*; *Thummel v. King*, 570 S.W.2d 679, 685–86 (Mo. banc 1978). As was stated in *Thummel*, this "is not simply a judicial word game or a matter of hypertechnicality on the part of the appellate courts." *Thummel*, 570 S.W.2d at 686. This rule is "rooted in sound policy" that this Court detailed in *Thummel*.

Point I only contains the first component. This point alleges an error of the trial court. However, the assertion that the trial court erred "because it did not follow the substantive law" does not set out an applicable rule of law. This merely repeats that the ruling was in error. Furthermore, Point I does not even attempt to provide an evidentiary basis for the application of that rule of law. The bare allegation of error in Point I is wholly inadequate and preserves nothing for review.

### VII.

■ Though the remainder of Crabtree's points are also not models, the points are clear enough that we can perceive the claims she is attempting to assert.

Crabtree claims the trial court abused its discretion by permitting defendants Clancy and Champion to respond to Crabtree's motion for summary judgment after the thirty days provided for by Rule 74.04(c)(2). Crabtree does not claim that this late filing caused any prejudice or surprise. Her only basis for finding an abuse of discretion is that Rule 74.04(c)(2) requires thirty days and does not mention any extension. However, Rule 44.01(b) states that even after the expiration of a filing period, the court "may at any time in its discretion" enlarge the filing period when the failure to respond was the result of excusable neglect. Crabtree does not claim that the late response was not due to excusable neglect, and nothing in the record supports such a claim. The trial court did not abuse its discretion allowing a late response to Crabtree's motion for summary judgment.

### VIII.

■ Crabtree claims the trial court abused its discretion in allowing Clancy and Champion to file a late answer to Crabtree's

request for admissions of fact. Crabtree admits that the trial court has the discretion to allow the late filing of answers to request for admissions and that absent a showing of bad faith or prejudice, there is no abuse of this discretion. Crabtree claims that the parties show a pattern of delay that demonstrates bad faith. However, Clancy and Champion assert that the delays were due in part to illness. The record does not support a claim of bad faith on the part of Clancy or Champion.

 Crabtree claims the late filing prejudiced her because it left her inadequate time to prepare for trial. However, Crabtree does not identify any new facts, new witnesses or new evidence introduced in the late-filed answer. Furthermore, Crabtree did not ask the trial court for more time to depose witnesses or to prepare for trial once the responses were filed. The trial court did not abuse discretion in allowing Clancy and Champion to file late responses to Crabtree's request for admissions of facts.

### IX.

 Crabtree next claims that the trial court abused its discretion in allowing Clancy and Champion to amend their answers to assert affirmative defenses. At the time of the request to amend the pleadings, each of the parties needed the trial court's approval. *Rule 55.33(a)*. The only evidence of abuse of discretion that Crabtree relies on is that Clancy and Champion amended their answers to add affirmative defenses. The addition of affirmative defenses does not itself make the court's ruling an abuse of discretion. Crabtree does not claim any hardship or surprise by the addition of the defenses. The trial court did not abuse discretion in allowing Clancy and Champion to amend their answers.

### X.

 Finally, Crabtree claims that the trial court abused its discretion by not allowing her to file a second amended petition. The "denial of leave to amend is within the discretion of the trial court and that discretion will

not be disturbed unless there is a showing that the court palpably and obviously abused its discretion." *Curnutt v. Scott Melvin Transport, Inc.*, 903 S.W.2d 184, 193 (Mo. App.1995). Crabtree claims that she acted promptly and that it is unfair to allow Clancy and Champion to amend their answers but not allow her to amend her petition. This claim does not establish a palpable and obvious abuse of discretion.

### CONCLUSION

The judgment of the trial court is reversed and the cause remanded for new trial consistent with this opinion.

BENTON, C.J., PRICE, ROBERTSON and COVINGTON, JJ., concur.

WHITE, J., dissents in separate opinion filed.

LIMBAUGH, J., concurs in opinion of WHITE, J.

WHITE, Judge, dissenting.

Section 287.780 could not be more clear: "No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer." I can not understand how a jury's finding that an employee was discharged "as a direct result" of filing a workers' compensation claim does not make that employee one who was fired "for exercising her rights under" chapter 287. The section does not contain any language suggesting that an employee is entitled to an action when they have been discharged "solely" or "exclusively" because they sought the protection afforded by workers' compensation. At a minimum, an employee has suffered discrimination when the employee is discharged even in part for filing a claim. To the degree that *Hansome v. Northwestern Cooperage Co.*[1] compels a different result, it is contrary to the clearly expressed intent of the legislature and should no longer be followed.

1. 679 S.W.2d 273 (Mo. banc 1984).

The "exclusive" language in *Hansome* appears to have been plucked out of thin air. None of the cases relied upon by the Court use that word.[2] Indeed, these cases use an entirely different mode of analysis than that adopted by the Court in *Hansome*. These cases held that, if an employee was fired for conduct that, when engaged in by an employee who had not filed a claim, would not lead to discharge, such a discharge was discriminatory and exposed the employer to suit under the statute.[3] In other words, an action existed if *any part* of the reason why the employee was fired was due to the filing of a claim. Under these cases, a firing that was a "direct result" of exercising worker's compensation rights would have been held to violate the statute, since they required merely a causal relationship, rather than an "exclusive" causal relationship.[4]

In short, *Hansome* was an aberration, and should be treated as such. The legislature has specifically directed that chapter 287 is to be liberally interpreted in favor of promoting the public welfare.[5] As this Court has noted, this rule of construction was intended to prevent the judge-made rules limiting employer liability to their employees from operating to undermine the broad policy goal of protecting workers announced in Chapter 287.[6] The "at will" doctrine is another common law rule that limits employer liability. Using that rule as a justification to narrowly construe the remedy provided in section 287.780 is perverse at best and, in any case, a direct violation of the liberal interpretive regime required by section 287.800.

I respectfully dissent, and would affirm the judgment of the trial court.

---

**2.** *Davis v. Richmond Spec. Rd. Dist.,* 649 S.W.2d 252 (Mo.App.1983); *Mitchell v. St. Louis County,* 575 S.W.2d 813 (Mo.App.1978).

**3.** *Davis,* 649 S.W.2d at 255; *Mitchell,* 575 S.W.2d at 815.

**4.** *Id.*

**5.** Section 287.800, RSMo 1994.

**6.** *Bass v. Nat'l Super Markets, Inc.,* 911 S.W.2d 617, 619 (Mo. banc 1995).