ZEL M. FISCHER, Judge.
I respectfully dissent from the majority’s overruling of Hansome v. Nw. Cooperage Co., 679 S.W.2d 273 (Mo. banc 1984), and Crabtree v. Bugby, 967 S.W.2d 66 (Mo. banc 1998). The Court is not free to decide this case, which is merely a matter of statutory construction, as though presented with the issue of causation as a matter of first impression.
What makes this country’s legal system the envy of the modern democratic world, and what sets it apart from most others, is the reliability of the outcome of cases based on the doctrine of stare decisis. The principal opinion gives short shrift to the doctrine of stare decisis, and it fails to recognize that adherence to precedent is most important when that precedent concerns settled questions of statutory interpretation. The principal opinion adopts a new statutory interpretation of an identical statute based solely on arguments that this Court has already considered and rejected twice. I would affirm the circuit court, which dutifully followed this Court’s prior decisions in Hansome and Crabtree.
Section 287.780, RSMo 2000, permits an employee to bring a civil action against his or her employer for discharging the employee in retaliation for seeking workers’ compensation benefits. In Hansome, this Court held that, for a workers’ compensation retaliation claim against the employer pursuant to § 287.780, the employee must prove that his or her action in seeking workers’ compensation benefits was the “exclusive cause” of termination. 679 S.W.2d at 275-76 & n. 2.
Fourteen years later, this Court reaffirmed that interpretation of § 287.780. Crabtree, 967 S.W.2d at 71-72. In Crabtree, this Court endorsed the exclusive cause standard of Hansome because any other rule “would encourage marginally competent employees to file the most petty [sic] claims in order to enjoy the benefits of heightened job security.” Id. The Court rejected the plaintiffs argument to give a more expansive construction to § 287.780 than that adopted in Hansome due, in part, to the absence of any intervening legislative action. Id. On the questions of stare decisis, this Court stated: “[TJhis Court should not lightly disturb its own precedent. Mere disagreement by the current Court with the statutory analysis of a predecessor Court is not a satisfactory basis for violating the doctrine of stare decisis, at least in the absence of a recurring injustice or absurd results.” Id. (emphasis added).
Other than 16 years and the changing membership of this Court, nothing has *387 changed that can explain why there is a legal need to change the standard of causation required by § 287.780.[1] The statutory language never provided, and still does not provide, a causation standard. This Court was originally forced to construe the statute in Hansome and provide a standard for the element of causation. This Court in Crabtree and Hansome declared that “exclusive cause” was the law. Now this Court declares “contributing factor” is the law. The doctrine of stare decisis would have little practical or intellectual value if all it took to change the law was the passage of time and Court membership. As Justice Sonia Sotomayor put it most succinctly, “[Ejstablishing that a decision was wrong does not, without more, justify overruling it.” Alleyne v. United States, — U.S.-, 138 S.Ct. 2151, 2164, 186 L.Ed.2d 314 (2013).
Adherence to precedent is especially vital in my view with respect to prior cases interpreting statutes. Justice Louis Bran-déis said it well in 1932:
Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right. This is commonly true even when the error is a matter of serious concern, provided correction can be had by legislation. But in cases involving the Federal Constitution, where correction through legislative action is practically impossible, this court has often overruled its earlier decisions.... In cases involving the Federal Constitution the position of this court is unlike that of the highest court of England, where the policy of stare decisis was formulated and is strictly applied to all classes of cases. Parliament is free to correct any judicial error; and the remedy may be promptly invoked.
Burnet v. Coronado Oil & Gas Co., 285 U.S. 393, 406-10, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandéis, J., dissenting) (internal citations omitted), overruled by Helvering v. Mountain Producers Corp., 303 U.S. 376, 387, 58 S.Ct. 623, 82 L.Ed. 907 (1938). The United States Supreme Court has continually upheld this principle. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 138-39, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (reaffirming a prior interpretation of a statute and stating that “stare decisis in respect to statutory interpretation has ‘special force,’ for ‘Congress remains free to alter what we have done’ ”); California v. F.E.R.C., 495 U.S. 490, 499-500, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990) (expressly adopting Justice Brandeis’s view that statutory interpretations are given greater stare decisis effect than constitutional interpretations); see also Alleyne, 133 S.Ct. at 2163 & n. 5 (stating that the force of stare decisis is at its lowest point in cases concerning procedural rules that implicate constitutional protections).
As these cases make clear, stare decisis is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet. The General Assembly is presumed to rely on this Court’s prior decisions interpreting statutes. State ex rel. Howard Elec. Co-op. v. Riney, 490 *388 S.W.2d 1, 9 (Mo. 1973) (“[T]he General Assembly must be presumed to have accepted the judicial and administrative construction of its. enactments.... ”); see State v. Grubb, 120 S.W.3d 737, 742 (Mo. banc 2003) (Teitelman, J., dissenting) (noting that the General Assembly is presumed to know the law in enacting statutes and stating that it had implicitly adopted a prior court of appeals decision by amending the law but not overruling the case).[2]
Cases interpreting statutes carry the legislature’s approval when it does not take action to overrule them, and the legislature ratifies them by allowing them to stand while enacting particular legislation on the same subject matter. See F.E.R.C., 495 U.S. at 500, 110 S.Ct. 2024 (“ ‘We are especially reluctant to reject this presumption ... in an area that has seen careful, intense, and sustained congressional attention.’ ”.). To overrule a legislative ratification of this Court’s prior statutory interpretations is to encroach on the function of the legislature:[3]
The principal opinion cites various cases for the proposition' that this Court may overrule its wrong decisions. Only one of those cases overruled a prior statutory interpretation — a 56-year old decision that the Court held could not be reconciled with the language of the statute. Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue, 94 S.W.3d 388, 391-92 (Mo. banc 2002). In the other cases cited by the majority, this Court either reaffirmed its prior statutory interpretation or considered only a prior constitutional interpretation or common law doctrine and not a question of statutory interpretation. See Watts v. Lester E. Cox Med. Ctrs., 376 S.W.3d 633, 636 (Mo. banc 2012) (interpreting article I, section 22(a), involving the right of trial by jury); Independence-Nat’l Educ. Ass’n v. Independence Sch. Dist., 223 S.W.3d 131, 137 (Mo. banc 2007) (interpreting article I, section 29, involving the right to bargain collectively); Med. Shoppe Int’l, Inc., 156 S.W.3d at 338-39 (reaffirming this Court’s *389 prior interpretation of a statute); Novak v. Kansas City Transit, Inc., 365 S.W.2d 539, 547 (Mo. banc 1963) (per curiam) (overruling a prior decision that refused to recognize a cause of action under the common law).
The principal opinion also points to Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 92-93 (Mo. banc 2010), in support of its holding that the Court need not stick with the exclusive cause standard set out in Hansome and Crabtree. In Fleshner, the Court decided that “contributing factor” causation was better than “exclusive cause” for wrongful discharge claims based on the public policy exception to the at-will doctrine. Id. at 92-95. The “key distinction” between such wrongful termination claims and workers’ compensation retaliation claims is that public policy termination claims arise under the common law of torts. Id. at 93; Op. at 378-79. What the majority fails to acknowledge is that the common law is the exclusive prerogative of the judiciary, for which this Court is the ultimate authority.[4] Although this Court has adopted the contributing factor causation standard for retaliation claims under the MHRA, as the principal opinion notes, this Court in Hill v. Ford Motor Co. merely reaffirmed its interpretation of the MHRA. 277 S.W.3d 659, 664-65 (Mo. banc 2009) (reaffirming Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819-20 (Mo. banc 2007)); Op. at 383.
The holdings in Hansome and Crabtree were not based on judicially created common law doctrine, nor were they interpretations of an infrequently amended state constitution or the tough-to-amend United States Constitution. They were interpretations of a Missouri statute, on which the General Assembly is presumed to rely, and to which this Court should give the greatest stare decisis effect. State ex rel. Howard Elec. Co-op., 490 S.W.2d at 9.
The principal opinion states that this Court did not “analyze or interpret the wording of section 287.780” in Hansome. Op. at 378. This Court in Hansome quoted § 287.780, then stated the four elements necessary to make a claim. 679 S.W.2d at 275-76. It did cite Davis and Mitchell as precedent for all four elements, but then analyzed those cases and another court of appeals case regarding the element of causation. Id. at 275-76 & n. 2. This Court recognized that the text of § 287.780 did not provide a specific causation standard. Then, this Court’s opinion analyzed how enacting § 287.780 necessarily modified the at-will employment doctrine and how that justified the holdings of the prior court of appeals decisions construing § 287.780 to require the filing of a workers’ compensation claim to be the exclusive cause for the termination. Id. at 275 n. 2. While reasonable minds may differ in hindsight as to whether that construction was correct, there is no doubt that this Court was required to, and did, construe § 287.780 in Hansome.
The presumption of legislative reliance on Hansome and Crabtree has even greater weight here because the General Assembly overhauled the workers’ compensation law in 2005. Not only did it expressly *390 abrogate other prior cases of this Court and the court of appeals by name and citation, see, e.g., Drewes v. Trans World Airlines, Inc., 984 S.W.2d 512, 514-15 (Mo. banc 1999); Kasl v. Bristol Care, Inc., 984 S.W.2d 852, 853-55 (Mo. banc 1999); Bennett v. Columbia Health Care, 80 S.W.3d 524, 532 (Mo.App.2002), the 2005 amendments took affirmative steps to abrogate a different causation standard, while leaving this Court’s decisions in Hansome and Crabtree undisturbed. The General Assembly thereby demonstrated its intent to retain the exclusive cause standard for workers’ compensation retaliation claims.[5]
Contrary to the suggestion in the principal opinion, the 2005 amendments discredit the attempt to characterize this case as merely involving “legislative inaction.” The General Assembly took affirmative steps that demonstrate its intent to retain the exclusive cause standard. It enacted a new causation standard for determining workers’ compensation coverage of accidental injuries by expressly abrogating two of this Court’s prior decisions by name. It could have enacted a new causation standard for workers’ compensation retaliation cases by abrogating Hansome and Crabtree. It did not. Accordingly, the principal opinion’s failure to adhere to this Court’s prior interpretation of § 287.780 offends the separation of powers by encroaching on the General Assembly’s ratification of the exclusive cause standard. Even if the “contributing factor” standard is the better rule, this Court should not usurp the legislative function by re-deciding settled questions of statutory construction due solely to a change of heart.
Finally, it should be noted that the principal opinion assumes that, if the legislature dislikes this Court’s decision to change the law from “exclusive cause” to “contributing factor,” the General Assembly is free to abrogate this holding by passing a bill to reinstate the exclusive cause standard. Once this Court puts this burden on the legislature, however, there is no reason why the General Assembly could not go the next step and repeal § 287.780 to eliminate the private cause of action entirely. Rather than risk watching such a debate, I would adhere to the principle of stare decisis, reaffirm this Court’s holdings in Hansome and Crabtree, and affirm the circuit court’s judgment.

. The principal opinion concludes that it is appropriate for this Court to reexamine the law because the legislature since has enacted the MHRA, which created private causes of action for specific categories of discrimination not related to filing a workers’ compensation claim. This rationale seems misplaced in light of the fact that the legislature is presumed to have adopted this Court’s prior interpretation of § 287.780 if it does not take any action, particularly in the context of enacting workers’ compensation legislation modifying causation standards without changing this Court's prior construction of § 287.780, as explained infra.

. State ex rel. Howard Elec. Co-op. is the last holding on point. Although this Court has stated that the presumption of legislative reliance on precedent is disfavored, this Court has never overruled its own prior decision after stating that the presumption is insufficient reasoning, on its own, to reaffirm the prior decision. The Medicine Shoppe case, cited by the majority, reaffirmed this Court’s prior interpretation of a statute. Med. Shoppe Inti, Inc. v. Dir. of Revenue, 156 S.W.3d 333, 338-39 (Mo. banc 2005).

. Although the People are ultimately sovereign and can change a constitution by amendment, it is up to this Court to say what the Missouri Constitution means. Mo. Const, art. V, sec. 3 (stating that this Court shall have exclusive appellate jurisdiction in all cases involving the validity of a statute); see Mar-bury v. Madison, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.”); see also City of Boemev. Flores, 521 U.S. 507, 519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (holding that section five of the Fourteenth Amendment gives Congress power to enforce its provisions, not power to interpret them). Constitutional reinterpretation is not disfavored to the extent statutory reinterpretation is disfavored because it is more problematic to infer that the People have approved or ratified a prior .constitutional interpretation without explicit amendment, as compared to legislation, which is relatively easier to enact.
Although the People may amend the Constitution to overrule or approve of a constitutional interpretation, this kind of amendment has been rare and is difficult to achieve. E.g., U.S. Const, amend. XI (overruling Chisholm v. Georgia, 2 U.S. 419, 2 Dali. 419, 1 L.Ed. 440 (1793)). And although the Missouri Constitution is amended more readily than the United States Constitution, and, therefore, cases interpreting it deserve somewhat greater stare decisis effect, the amendment process is still cumbersome and “much more difficult than a legislative change to correct an unwarranted interpretation of a statute." Med. Shoppe Int’l, Inc., 156 S.W.3d at 335 n. 5.

. Because stare decisis is at its strongest in cases involving statutory interpretation, it necessarily is at its weakest in cases involving common law doctrines. Although the rule of law still demands that this Court not lightly overrule its prior common law decisions (because it is imperative to retain them in the interests of reliance, predictability, and. stability), this Court is the ultimate authority on questions of Missouri common law. In deciding whether to overrule prior decisions based solely on common law doctrine, this Court does not face the same separation of powers concerns it faces in deciding whether to overrule prior interpretations of statutes and, to a lesser degree, the United States and Missouri constitutions.

. In 2005, the General Assembly repealed 35 sections of the revised statutes of Missouri and enacted 40 new sections “relating to workers’ compensation law.” Act of Mar. 30, 2005, SB. 1 & 130, 2005 Mo. Laws 907, 907 (codified as amended at chapters 286 and 287, RSMo Supp.2013). This Court and the court of appeals had previously held that, to obtain a workers' compensation award for accidental injury, an employer need only show that the employee's work was a “substantial factor" in the cause of the injury. Drewes, 984 S.W.2d at 514-15; Kasl, 984 S.W.2d at 853-55; Bennett, 80 S.W.3d at 532. The General Assembly expressly abrogated those three decisions and replaced the "substantial factor” causation test with the "prevailing factor” causation test. 2005 Mo. Laws at 910-11 (codified at §§ 287.020.3(1), 287.020.10, RSMo Supp.2013).