Carl Andrew PITTS, an Infant, By and Through Carl E. Pitts, Next Friend, Plaintiff-Appellant,

v.

FRED WEBER CONTRACTOR, INC., a Corporation, Defendant-Respondent.

No. 33655.

St. Louis Court of Appeals, Missouri.

March 23, 1971.

Murphy & Schlapprizzi, St. Louis, James W. Jeans, Kansas City, for plaintiff-appellant.

Carter, Brinker & Doyen, Bernard C. Brinker, Clayton, for defendant-respondent.

SMITH, Commissioner.

This appeal reaches us following the trial court's action sustaining defendant's motion for judgment in accordance with its motion for a directed verdict, which set aside a judgment of $7500 based upon a jury verdict. The court also and alternatively, sustained the defendant's motion for new trial based upon error in the plaintiff's verdict-directing instruction.

Plaintiff, nine years and four months old at the time of the accident, was injured when he fell off a bluff eighty feet high, located on the right-of-way of I–55 at the foot of Kosciusko Street in the City of St. Louis. I–55 was then under construction and defendant was the contractor for the section of the highway where the accident occurred. The right-of-way was owned by the State of Missouri.

Plaintiff's pleaded theory was that defendant altered the terrain at the top of the bluff and by so doing made the edge more accessible to pedestrians and weakened the edge so as to make it not reasonably safe for persons including plaintiff who could reasonably be expected to be in the area. It was also charged that defendant failed to erect barriers or to warn of the dangerous condition.

Plaintiff's attack on the action of the trial court comes from three fronts. The first is that plaintiff and defendant do not fit the traditional classification of trespasser, licensee, or invitee and owner or occupier, and general rules of tort liability should apply. The second is that if such classification does apply, plaintiff was a licensee and defendant was under the duty to warn of the dangerous condition. The third attack requests this court to abandon

the theory of determining the status of the plaintiff in ascertaining the duty of the defendant.

■ As to this last contention we are advised that the traditional categories of trespasser, licensee or invitee constitute a three-stalled Augean stable, which we are invited to clean, or more precisely to eliminate entirely. However, just as Hercules was, by the arts of Juno, compelled to follow the commands of Eurystheus, we are by the Arts. of our Constitution compelled to follow the latest commands of our Supreme Court. Article 5, Section 2, Missouri Constitution, V.A.M.S. Although substantial remodeling of this alleged Augean edifice has occurred within this state in recent years,[1] we cannot interpret these decisions as authorizing us to release the rivers to completely destroy the structure. We therefore will decline the labor tendered to us and determine the rights of the parties on the law as it presently exists in this state.

Defendant was a contractor employed by the state, the possessor of the land, to construct a highway over the right-of-way. In such posture its status is controlled by the rule set forth in Stoeppelman v. Hays-Fendler Construction Co., Mo.App., 437 S.W.2d 143 [8]; "One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability and enjoys the same freedom from liability as though he were the possessor of the land, for physical harm caused to others upon the land by the dangerous character of the structure or other condition while the work is in his charge."

See also Edwards v. E. B. Murray & Co., Mo.App., 305 S.W.2d 702 [3].

■ We therefore treat defendant as if it were the owner or occupier of the land in question. We reject plaintiff's ingenious contention that since the land was state owned and since plaintiff was a part of the body politic of the state, he had a right (presumably as an owner) to be upon the land and cannot therefore be a trespasser, licensee or invitee. The land in question was not, at the time of the accident, for the use of the public. It was in possession of the defendant for the purpose of building a highway and the record does not support a conclusion that the public generally was invited to use the property during the construction work. While there was evidence that many people did come upon the right-of-way during the time defendant was in possession of it, to see the progress of the work, such evidence goes to the knowledge of the defendant and not to the right of the public to be there. We know of no rule of law which gives each member of the public an unfettered right of access to every building, structure or piece of land owned by the sovereign as if he were the owner thereof. Plaintiff has given us no authority for this unique proposition of law and we have found none. Plaintiff's status must be determined upon the same basis as that of any other person upon real estate possessed by another.

In Wells v. Goforth, Mo., en banc, 443 S.W.2d 155 (1969), the Supreme Court adopted the rule of law stated in 2 Restatement, Law of Torts, First § 342, (1934) as to the liability of possessors of land to licensees.[2] In Arbogast v. Termi-

---

1. See Thieret v. Hoel, Mo., 412 S.W.2d 127; Wells v. Goforth, Mo., 443 S.W.2d 155; Arbogast v. Terminal Railroad Assn. of St. Louis, Mo., 452 S.W.2d 81; Cunningham v. Hayes, Mo.App., 463 S.W.2d 555, Filed February 1, 1971.

2. Section 342:
"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he
(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

nal Railroad Assn. of St. Louis, Mo., 452 S.W.2d 81 (1970), it would appear the court applied the rule of law stated in 2 Restatement, Law of Torts, First § 339, (1934) as to the liability of possessors of land to young children trespassing on the land. That rule is:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

Unlike *Wells* the Supreme Court in *Arbogast* did not flatly state that it was adopting the rule of Section 339. A study of the opinion seems, however, to indicate that the court determined the submissibility of plaintiff's case under that section.

■ In view of the Supreme Court's refusal in the *Wells* case to impose on an owner liability to licensees in the absence of actual knowledge of the defect or condition by the owner of the land (vis a vis constructive or "should have known,"

knowledge) we think plaintiff's strongest case for recovery is under First Restatement, § 339 above. But whether we apply §§ 339 or 342 the submissibility of plaintiff's case hinges on whether the condition was obvious or concealed. Attractive nuisance liability, even as modified by § 339, liability to licensee as adopted in *Wells,* or liability to invitees (See Bohler v. National Food Stores, Mo., 425 S.W.2d 956, [1, 2]) exists only in respect to dangerous conditions or structures where the danger is not open and obvious to the injured party. It is true that a condition known to be dangerous to an adult will not necessarily be held to be such to a child because of lack of maturity. But as stated in the comments to § 339, 2 Restatement Torts First, p. 922: " * * * It [possessor's duty] does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them * * *"

The cliff over which plaintiff fell was a sheer drop of some eighty feet. It had a rock face. From the top of the rock there extended upwards a dirt slope some fifteen feet at an angle of sixty to seventy degrees. The face of this slope was loose, moist, graded dirt placed there as a part of defendant's grading operation. The top of this slope, where plaintiff was walking, was described as "very dry pebbly clay" by plaintiff's father and as "clay-like substance" by plaintiff. It was "hard earth, but a lot of pebbles, small clods of earth." A movie film of the area made by a local television station right after the accident, and identified by the plaintiff's mother and father as accurately portraying the conditions at the time of plaintiff's fall, was shown to the jury and has been viewed by this court. It shows the ground at the top of the slope to be hard with small clods of dirt throughout, as is commonly found in areas recently graded or excavated. It also shows the slope as extremely steep, nearly straight down. On the day of the acci-

(i) to make the condition reasonably safe, or

(ii) to warn them of the condition and the risk involved therein."

dent, July 3, 1967, the weather was hot and dry. The accident occurred in the early afternoon.

Plaintiff did not reside in the area and had never been there before. He left the home where he was visiting, crossed the right-of-way and in company with another boy took a path along the side of the cliff down to the Mississippi River. He played near the river for about fifteen minutes and then retraced his steps up the path. His friend had taken another, steeper path back. Upon arriving at the top of the cliff and slope plaintiff turned to his left and proceeded to walk along the top of the slope within one foot of its edge. He was wearing moccasins. As he was walking along the edge of the slope, the ground "gave 'way" and he slid down the slope and over the edge of the cliff. Plaintiff stated that no hole opened up under him. On several occasions plaintiff indicated that he started to slide and at one point on cross-examination he stated: " * * * my feet slipped from under me and I was sitting down and tried to grab for something." As he was walking along the top of the slope plaintiff could see where the clay-like substance ended and the moist, graded ground comprising the slope began.

Conditions of height, in the absence of some other factor creating a special risk that the child will not avoid the danger, do not impose liability under either §§ 339 or 342. Arbogast v. Terminal Railroad Assn. of St. Louis, Mo., 452 S.W.2d 81, [10–12]; Wells v. Goforth, Mo., 443 S.W.2d 155, l.c. 157. As stated in *Arbogast:* " * * * A child is bound to appreciate a simple and obvious danger of falling from an object or structure, but is not bound to appreciate a danger, presented or exaggerated, by a defect in the structure or other peculiar circumstance which is hidden from the child or which a child would fail to appreciate because of his immaturity. * * *" [10–12].

Plaintiff was aware of the existence of the bluff and of the extremely steep slope composed of loose earth leading to it. He was not misled by change of the terrain by defendant as plaintiff had never been at the site before. Furthermore, we cannot conclude that any hidden defect or unappreciated danger was present. The only possible inference which can be drawn from plaintiff's evidence, taking it most favorably to plaintiff, is that he slipped or slid while walking within a foot of the edge of the slope. His testimony that the ground "gave 'way" could describe either a cave-in or a slipping or sliding on loose clods of earth. His testimony effectively and conclusively negated a cave-in and throughout his testimony he consistently stated he slipped or slid. There was no evidence of any condition which caused the slip other than the loose clods of dirt at the top of the slope. The clods were clearly visible and obvious. They were neither hidden from the child nor were they a condition which a child of nine years would fail to appreciate because of his immaturity.

The plaintiff's evidence failed to show any condition which caused his injury which would authorize recovery against defendant under either §§ 339 or 342 of Restatement First, nor under any other applicable theory of Missouri law. The trial court correctly entered its judgment in favor of defendant.

Judgment affirmed.

PER CURIAM.

The foregoing opinion by SMITH, C., is adopted as the opinion of this court.

Accordingly, the judgment is affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.