Becky Thompson appeals from a judgment awarding her $3,000 on a personal injury claim. Upon review of the briefs and the record, we find no error and affirm the judgment. Because a published opinion would have no precedential value, we have provided the parties with a Memorandum explaining the reasons for our decision.

AFFIRMED. Rule 84.16(b).

**Melvin Michael FIELDS and Christine Wardlow, Respondents,**

v.

**Norbert HENRICH and Sharon K. Henrich, Appellants.**

**No. WD 66051.**

Missouri Court of Appeals, Western District.

Dec. 19, 2006.

James H. Ensz, Kansas City, MO, for Appellants.

Philip F. Cardarella, Kansas City, MO, for Respondents.

Before JOSEPH M. ELLIS, P.J., ROBERT G. ULRICH, and RONALD R. HOLLIGER, JJ.

ROBERT G. ULRICH, Judge.

Norbert and Sharon Henrich appeal the order of the trial court granting Melvin Michael Fields and Christine Wardlow a new trial following a jury verdict in favor of the Henriches. Mr. Fields and Ms. Wardlow (Plaintiffs) brought an action for the wrongful death of their two-year-old son, Melvin Michael Fields II (Michael), against the Henriches (Defendants) alleging that Defendants were negligent in failing to erect a fence or wall around a sewage pond on their property. Michael was found in the pond after he wandered from Defendants' neighbors' yard and died

four days later as a result of near drowning.[1] The trial court granted Plaintiffs' motion for a new trial based on its erroneous application of the Missouri Recreational Land Use Act (RUA), section 537.345 through 537.348.[2] On appeal, Defendants claim that the trial court erred in granting the new trial asserting that the RUA was applicable and required Plaintiffs to prove gross negligence. Defendants also claim that the trial court erred in denying their motions for directed verdict because the pond was an open, obvious, and nondangerous condition that they had no duty to safeguard. The judgment of the trial court is reversed, and the case is remanded with directions.

## Facts

Defendants lived in a residential subdivision in Clay County outside of the City of Smithville. The average size of the lots in the neighborhood was three acres. Defendants' lot was eight acres and contained a single-family residence. A sewage aeration pond was situated in the front yard. The pond measured approximately thirty feet by twenty-five feet and was four feet deep at its deepest point. It was not fenced at the time of the accident.

On May 16, 1998, Michael and his grandmother were attending a graduation party at the home of Defendants' neighbor. Michael's grandmother was conversing with other guests on the deck when she noticed that Michael, who had been running in and out of the house, had disappeared. She and the other guests hollered for the child, scattered, and began looking for him.

After becoming aware that people were on their property looking for someone, Mr.

Henrich and his son found Michael in the aeration pond. His son ran back to the house to call 911 and get his mother. Mr. Henrich sensed no sign of life in the child. He and Mrs. Henrich then began to perform CPR on Michael until law enforcement and EMTs arrived. Michael was transported to Liberty Hospital and then to Children's Mercy Hospital. He died four days later.

At trial, Mr. Henrich testified that in 1996, he removed a fence that surrounded the pond because it was in disrepair. He did not replace the fence immediately, instead completing other repair and clean-up activities on the property. Mr. Henrich stated that he believed the fence was originally installed to keep out animals. He was not aware of any ordinance that required him to fence around the aeration pond. When he became aware that the neighbor's dogs had gotten into the pond, he planned to put a fence around it. At the time of the tragedy, Mr. Henrich had purchased materials to construct a fence to keep dogs, livestock, and other animals out of the pond though it had not yet been constructed.

## Procedural History

This case was initially tried in November 2001 with a verdict for Plaintiffs in the amount of $10,000. Plaintiffs filed a motion for new trial on the damages issue only, and Defendants filed a motion for JNOV and, in the alternative, for a new trial. The trial court granted a new trial on all issues. Defendants appealed, but this court dismissed their appeal on grounds that they were not aggrieved by the trial court's order granting a new trial.

---

1. According to the testimony of the treating physician, death from near drowning differs from death from drowning only to the extent that the person survives for more than twenty-four hours before succumbing.

2. All statutory references are to RSMo 2000 unless otherwise indicated.

*Fields v. Henrich,* 112 S.W.3d 50 (Mo.App. W.D.2003).

The case was retried in June 2005. At the close of Plaintiffs' case and at the close of all evidence, Defendants moved for directed verdict arguing that they had no duty to contemplate that a toddler would not have appropriate supervision in the area of their pond and, thus, no duty to guard their pond. The trial court overruled the motions, and the case was submitted to the jury. The court instructed the jury based on the RUA:

### INSTRUCTION NUMBER 7

Your verdict must be for plaintiffs and against Defendant Sharon Henrich if you believe:

First, the pond on defendants' property was a dangerous condition, and

Second, said defendant knew or should have known that the pond on defendants' property was a dangerous condition, and

Third, said defendant's failure to warn of or guard the pond on defendants' property involved gross negligence on her part, and

Fourth, as a direct result of said defendant's failure to warn of or guard the pond on defendants' property, Michael Fields died.

Instruction Number 8 was the same as Number 7 except that it applied to Mr. Henrich. Instruction Number 6 defined the term "grossly negligent" or "gross negligence" as "the showing of complete indifference to or conscious disregard for the safety of others."

The jury returned its verdict in favor of Defendants, and the trial court entered its judgment on the verdict. Plaintiffs filed a motion for new trial arguing that the RUA did not apply to the facts of this case and, thus, that the jury should have been in-structed on simple negligence rather than gross negligence. The trial court granted Plaintiff's motion for new trial reversing its decision that the RUA and instructions consistent with it reflected applicable law. This appeal by Defendants followed.

### Point One

In their first point on appeal, Defendants claim that the trial court erred in granting Plaintiffs' motion for new trial because the RUA was applicable, the case was properly submitted on instructions consistent with the RUA requiring proof of gross negligence and the presence of a dangerous condition on the land to establish culpability, and the jury's verdict for Defendant was correct.

 The RUA creates "tort immunity for landowners who open their land to the public free of charge for recreational use." *Lonergan v. May,* 53 S.W.3d 122, 127 (Mo. App. W.D.2001). The purpose of the RUA is "to encourage the free use of land for recreational purposes in order to preserve and utilize our natural resources." *Id.* Specifically, section 537.346 provides:

> Except as provided in sections 537.345 to 537.348, an owner of land owes no duty of care to any person who enters on the land without charge to keep his land safe for recreational use or to give any general or specific warning with respect to any natural or artificial condition, structure, or personal property thereon.

Recreational use is defined in the RUA as "hunting, fishing, camping, picnicking, biking, nature study, winter sports, viewing or enjoying archaeological or scenic sites, or other similar activities undertaken for recreation, exercise, education, relaxation, or pleasure on land owned by another." § 537.345(4). A landowner may incur liability, however, for malicious or grossly

negligent failure to guard or warn against a dangerous condition or for injuries to a person who has paid a charge for entry to the land. § 537.348(1) & (2). Additionally, a landowner may be liable for injuries occurring on or in any land within the boundaries of a city or town, a swimming pool, any residential area, or any noncovered land. § 537.348(3). A residential area is "a tract of land of one acre or less predominately used for residential purposes, or a tract of land of any size used for multifamily residential services." § 537.348(3)(c).

Defendants contend that because their property was outside the city and was eight acres containing a single-family residence and Michael never paid any charge for his entry onto the property, they qualified for immunity under the literal language of the RUA and did not fall with any exception thereunder. Defendants' contention, however, ignores the phrase "for recreational use" in the RUA. The primary rule of statutory construction is to ascertain the intent of the legislature from the language used and to give effect to that intent if possible. *State ex rel. Nixon v. QuikTrip Corp.*, 133 S.W.3d 33, 37 (Mo. banc 2004)(quoting *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988)). Statutory construction requires that every word of the statute be given meaning and effect, and no words are treated as surplusage. *Crack Team USA, Inc. v. Am. Arbitration Ass'n*, 128 S.W.3d 580, 581–82 (Mo.App. E.D.2004). "Courts will reject an interpretation of a statute that requires ignoring the very words of the statute." *State ex rel. Womack v. Rolf*, 173 S.W.3d 634, 638 (Mo. banc 2005).

■ Section 537.346 establishes the general rule that an owner of land owes no duty of care "to keep his land safe *for recreational use.*" (Emphasis added.) In determining whether a landowner falls within the ambit of section 537.346 and, thus, enjoys immunity against negligence actions, four factors must be satisfied: (1) an owner of land; (2) entry upon the land; (3) entry upon the land without charge; and (4) entry for recreational use. *Lonergan*, 53 S.W.3d at 128. If all factors are satisfied, the owner owes no duty to the entrants to keep his land safe or to give any general or specific warnings with respect to any natural or artificial condition, structure, or personal property on the land unless one of the exceptions contained in section 537.348 apply. *Id.* Additionally, section 537.347 outlines the effect of "an owner of land who directly or indirectly invites or permits any person to enter his land *for recreational use*, without charge." (Emphasis added.) Such owner does not extend certain assurances or assume responsibility for certain injuries. *Id.* Both sections 537.346 and 537.347 refer to and require "recreational use" of the land before a landowner may enjoy immunity against tort actions. The words "for recreational use" must be given meaning and effect. Defendants' contention would treat the words "for recreational use" as mere surplusage. It would require ignoring the very words of the Act including a whole subsection defining "recreational use" and, further, would extend immunity far too broadly than the legislature intended. Defendants' contention is, therefore, without merit. Recreational use of the land is required for immunity under the RUA.

■ The RUA did not apply to the circumstances of this case. Defendants' property was an eight-acre residential lot. They maintained an unfenced sewage aeration pond at the front of their property. No evidence was offered that they allowed their front yard or any part of their large lot including the aeration pond to be used for recreational purposes. No evidence was presented that they directly or indi-

rectly invited or permitted any person to enter their property for recreational use. Defendants simply did not qualify under the language of the RUA for the protection afforded to those who allow recreational use of their land. Therefore, the trial court correctly found that submission of verdict directing instructions consistent with the RUA was erroneous. Whether Plaintiffs are entitled to a new trial, however, is dependent upon whether Plaintiffs otherwise made a submissible case, which Defendants challenge in point two.

## Point Two

In their second point on appeal, Defendants claim that the trial court erred in denying their motions for directed verdict at the close of Plaintiffs' case and at the close of all the evidence. They allege that, even without the protection of the RUA, they had no duty to safeguard the pond because the pond was an open, obvious, and non-dangerous condition as a matter of law.

 In reviewing the denial of a motion for directed verdict by a defendant, the appellate court determines whether the plaintiff submitted substantial evidence at trial that tended to prove the facts essential to the plaintiff's claim. *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 801 (Mo. banc 1997). The evidence is viewed in the light most favorable to the plaintiff, affording the plaintiff all reasonable inferences from the evidence and disregarding the defendant's evidence that contradicts the plaintiff's claims. *Id.*

As discussed above, the jury was instructed consistent with the RUA over Plaintiffs' objection, and the trial court correctly found such instructions errone-ous. Plaintiffs' case and proposed verdict directors were based on a modified attractive nuisance doctrine, section 339 Restatement (Second) of Torts (1965). The question is whether Plaintiffs made a submissible case under this theory.

 In Missouri, the status of the one going on the land of another establishes the legal framework by which the court determines as a question of law the duty of care owed by the possessor. *Humphrey v. Glenn*, 167 S.W.3d 680, 683 (Mo. banc 2005)(quoting *Seward v. Terminal R.R. Ass'n of St. Louis*, 854 S.W.2d 426, 428 (Mo. banc 1993)). Generally, a possessor of land is not liable for harm caused to a trespasser by failure to put land in a reasonably safe condition. *Id.* (quoting *Seward*, 854 S.W.2d at 428). One exception to the "no duty" rule regarding trespassers is that a possessor of land owes a duty of care to child trespassers for a dangerous artificial condition he maintains at a place on the land that children are likely to trespass. *Id.* (citing *Salanski v. Enright*, 452 S.W.2d 143, 144–46, n. 1 (Mo.1970)). Such exception is set out in Section 339 Restatement (Second) of Torts (1965), which the Missouri Supreme Court adopted in 1970 [3] modifying the attractive nuisance doctrine previously applied in Missouri. It provides:

§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

---

**3.** See *Anderson v. Cahill*, 485 S.W.2d 76, 77 (Mo.1972); *Salanski v. Enright*, 452 S.W.2d 143, 144 (Mo.1970); *Arbogast v. Terminal* *R.R. Ass'n. of St. Louis*, 452 S.W.2d 81, 84–85 (Mo.1970).

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

RESTATEMENT (SECOND) OF TORTS § 339 (1965). Liability under section 339 exists only with respect to dangerous conditions or structures where the danger is not open and obvious to the injured party. *Miller v. River Hills Dev.*, 831 S.W.2d 756, 762 (Mo.App. E.D.1992); *Pitts v. Fred Weber Contractor, Inc.*, 466 S.W.2d 124, 127 (Mo. App.1971). A condition known to be dangerous to an adult will not necessarily be held to be such to a child because of lack of maturity. *Id.* But the duty of the possessor of land "does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them." *Miller*, 831 S.W.2d at 762 (quoting RESTATEMENT (SECOND) OF TORTS § 339 cmt. i (1965)). Accordingly, courts have specified certain conditions that trespassing children, as a matter of law, can be expected to understand as discussed in comment j of section 339:

> There are many dangers, such a[sic] those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.

RESTATEMENT (SECOND) OF TORTS § 339 cmt. j (1965). Pools and ponds are examples of such conditions or dangers that a trespassing child of sufficient age to be allowed at large may be expected to fully understand. *Crawford v. Pac. W. Mobile Estates, Inc.*, 548 S.W.2d 216, 221 (Mo.App.1977). In the pool and pond cases, cited by Defendants here in arguing that Plaintiffs failed to make a submissible case, the bodies of water constitute open and obvious danger that should be within the comprehension of any child old enough to be permitted to roam at large, and landowners are not required to "child-proof" their premises against the obvious danger. *Id. See e.g. Finn v. Newsam*, 709 S.W.2d 889, 892 (Mo.App. W.D.1986) (where plaintiffs failed to make a submissible case of negligence under section 339 for drowning death of seven year old boy because the pond constituted an open and obvious danger that a child old enough to roam the fields should have comprehended). *See also Baker v. Praver & Sons, Inc.*, 361 S.W.2d 667 (Mo.1962) (where defendant was not liable for death of four and one-half year old boy who drowned in a pool of water on land being developed by defendant because old attractive nuisance doctrine did not apply to "ponds, water-filled quarries, and pools of water in creeks and natural water courses").

Exceptions exist, however, to the fixed rules that trespassing children may be expected, as a matter of law, to appreciate certain dangers and avoid them as discussed in comment j. One is where a distracting element prevents the child from realizing inherent danger. RESTATEMENT (SECOND) OF TORTS § 339 cmt. j (1965). *See Crawford,* 548 S.W.2d at 222 (where landowner was liable for drowning of six year old boy in an uncovered settlement tank because distracting factors existed to prevent child's realization of danger in that effluent in tank was dark and murky hiding true depth of effluent, a ball was floating on top of the effluent, and a wooden and metal bridge stretched across the tank). Another exception is where the child is too young to appreciate the danger:

> Where, however, the possessor knows that children too young to appreciate such dangers are likely to trespass on his land, he may still be subject to liability to such children under the rule stated [in section 339].

RESTATEMENT (SECOND) OF TORTS § 339 cmt. j (1965). The Restatement sets out two illustrations under comment j. In the first, the landowner is not liable for the drowning of a trespassing ten-year-old boy in a small artificial pond on his land. RESTATEMENT (SECOND) OF TORTS § 339 cmt. j illustration no. 6 (1965). But the landowner is liable for the drowning a three year old child in a small artificial pond full of gold fish on his land, which adjoins a nursery providing care for two to five-year-olds who are, as the landowner knows, in the habit of trespassing on his land and going near the pond. RESTATEMENT (SECOND) OF TORTS § 339 cmt. j illustration no. 7 (1965). This exception is also discussed in Prosser and Keeton in The Law of Torts (5th ed.1984):

These fixed rules have been found deficient in certain situations. One is where the possessor of land knows or has reason to know that children who are likely to trespass are so extremely young that they cannot appreciate the danger. When an infant of three or four is known to be in the vicinity of fire or water, or other dangerous conditions, it is "pure fantasy, straight from outer space" to say that he will be fully able to protect himself against them.

W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 407–08 (5th ed.1984).

In this case, Defendants' pond did not constitute an open and obvious danger to young Michael. Only two years old, Michael could not be expected to fully understand and appreciate the danger of the aeration pond on Defendants' property, as could perhaps another child old enough to be permitted to roam at large. And while some evidence was offered that the pond contained frogs, which might be a distracting influence to a toddler, the analysis does not stop there. To be liable for Michael's death, Defendants must have known or had reason to know that children too young to appreciate the danger of the pond were likely to trespass. Such a showing was not made in this case. While evidence was offered that Defendants' property was in a residential area, no toddlers lived in the area. The youngest child in the neighborhood was nine years old. And the only children living in the immediate area of Defendants' property at the time of the accident were teenagers. While Defendants' neighbor testified that her five-year-old nephew would visit occasionally and Michael himself had been to her house before with his grandmother, absolutely no evidence was offered that they or any other young child had trespassed onto Defendants' property or gone near the pond in the past. Without evi-

dence that Defendants had reason to know young children were likely to trespass on their land, Plaintiffs failed to make a submissible case against Defendants.[4] *Compare Crawford*, 548 S.W.2d at 220–222 (where landowner was liable for drowning of six year old boy in an uncovered settlement tank because abundant evidence showed that children played in immediate area of tank and a cement block stairway provided easy access if not an open invitation to enter tank area). The judgment of the trial court granting a new trial is, therefore, reversed, and the case is remanded to the trial court for entry of judgment in favor of Defendants.

ELLIS, P.J. and HOLLIGER, J. concur.

---

4. At trial, Plaintiffs introduced a Clay County ordinance requiring fencing around sewage ponds to preclude livestock and discourage trespassing. Plaintiffs never argued and did not propose a negligent per se instruction for Defendants' violating the ordinance but only argued that the violation tended to prove Defendants' violation of a duty in their negligence action. In their brief on appeal, Plaintiffs again mention that Defendants violated the ordinance in arguing that Defendants were negligent in Michael's death. Nevertheless, Plaintiffs failed to offer substantial evidence to prove the essential element of Defendants' knowledge or reason to know children too young to appreciate the danger of the pond were likely to trespass as discussed above.